**Zvi SAAR, Plaintiff Pro Se,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Stephen F. Markstein, Assistant United States Attorney, Douglas Lansing, Warden, Metropolitan Correctional Center, George May, Unit Manager, 9 South, Metropolitan Correctional Center, Defendants.**

No. 86 Civ. 9680 (JES).

United States District Court,
S.D. New York.

Feb. 7, 1989.

Zvi Saar, Danbury, Conn., pro se.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Ellen B. Silverman, Sp. Asst. U.S. Atty., of counsel), for defendants.

## OPINION AND ORDER

SPRIZZO, District Judge:

*Pro Se* prisoner Zvi Saar[1] brings this *Bivens*[2] action pursuant to the First, Fifth, Sixth, and Eighth Amendments.[3] Plaintiff alleges that defendants deprived him of access to his personal property and legal materials inhibiting his access to the courts, segregated him in administrative detention in violation of his due process rights under the Fifth Amendment, and failed to provide him with adequate medical care in violation of the Eighth Amendment's proscription against the use of cruel and unusual punishment. As relief for these alleged constitutional violations plaintiff seeks $20,000,000 in compensatory damages, $3,100,000 in punitive damages and an injunction requiring defendants to return his property.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, and for summary judgment.[4] As evidenced by the volume of plaintiff's supporting affidavits, plaintiff clearly understood the motion to be one for summary judgment. Therefore, the Court will treat the motion as one for summary judgment. For the reasons set forth below, defendants' motion is granted.

## FACTS

The following facts, except as noted, are

1. Plaintiff's original request for "standby" counsel was denied by Order of this Court dated July 2, 1987. Subsequently, plaintiff has revived that request in his numerous affidavits and legal memoranda. The Court finds the appointment of standby counsel to be no more appropriate now than at the time of plaintiff's original request. This is particularly true where, as here, plaintiff is an Israeli attorney, and has a history of causing problems for appointed counsel. *See* Declaration of Stephen Markstein at ¶¶ 3, 5–8. Plaintiff has also made repeated requests for discovery in the many papers associated with the instant motion. The Court by Order dated February 3, 1988, stayed all discovery pending resolution of defendants' motion to dismiss. Because this is clearly a case where "bare allegations of malice should not suffice to subject government officials ... to the burdens of broad discovery," *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), plaintiff's additional requests for discovery are denied.

2. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (individuals acting beyond scope of official duties may be held liable in damages for violation of another's constitutional rights).

3. The Court has been unable to find any discussion of what constitutes plaintiff's First Amendment claim in any of plaintiff's many papers. For purposes of this motion, the Court assumes that plaintiff intended to make out a claim of hindering access to the courts under the Sixth Amendment. That appears to be the claim asserted in his papers.

4. The individual defendants have also moved pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the complaint on the grounds that they were not properly served under Fed.R.Civ.P. 4(d)(1). Where, as here, a government official is sued in his individual capacity, plaintiff must serve him personally. *See Martin v. New York State Dept. of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir. 1978). However, because such a motion can only result in a dismissal without prejudice, and because the Court is dismissing with prejudice on several other grounds, there is no need to grant defendants' motion under Rule 12(b)(2).

undisputed.[5]

Plaintiff *pro se* is currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("Danbury"). In this action he has named as defendants the United States Justice Department, Stephen F. Markstein, the Assistant United States Attorney ("AUSA") who prosecuted plaintiff for the crimes for which he is now incarcerated, Douglas Lansing, the Warden of the Metropolitan Correctional Center ("MCC"), and George May, the manager of Unit 9 South of the MCC.

Plaintiff was arrested on August 14, 1985 in the course of a heroin transaction with an agent of the Drug Enforcement Agency ("DEA"). *See* Declaration of Stephen Markstein ("Markstein Dec.") at ¶ 3. Plaintiff was later prosecuted and convicted before then Chief Judge Motley of possession with intent to distribute heroin, and of distribution of heroin. *Id.* at ¶ 13. On April 14, 1986, Chief Judge Motley sentenced plaintiff to concurrent terms of seven years imprisonment. *Id.*

During the pre-trial phase of the prosecution plaintiff either retained or had appointed for him no less than four attorneys, retaining a fifth for his appeal. *Id.* at ¶¶ 4–6, 14.[6] After plaintiff's fourth trial attorney asked to be relieved, Chief Judge Motley allowed plaintiff to proceed *pro se*.[7] *See* Markstein Dec. at ¶ 8.

During the time leading up to plaintiff's trial, and continuing through the decision on appeal from his conviction, plaintiff sought access to certain largely unspecified documents and items of personal property seized post-arrest by the DEA. *See id.* at ¶ 7. AUSA Markstein provided access to the property on a limited basis to plaintiff's first three attorneys, *see* Markstein Dec. at ¶ 7, and complete access was given to plaintiff's fourth trial attorney pursuant to the order of Chief Judge Motley on plaintiff's motion under Fed.R.Cr.P. 16. *See id.;* Leighton Dec. at 1–2. Plaintiff was also given copies of audio tapes and documents after trial counsel was relieved. *See* Leighton Dec. at 1–2; Markstein Dec. at ¶ 7.

Subsequent to his conviction, plaintiff was held at the MCC until April 11, 1986. On February 18, 1986, plaintiff was transferred to administrative detention in Unit 9 South of the MCC because he had stated his intent to go on a hunger strike. *See* Declaration of Stephen R. Rhoades ("Rhoades Dec.") at ¶ 6. While in administrative detention on February 19, 1986, plaintiff caused a disruption by screaming and banging on the door of his cell. *Id.* at ¶ 5. His failure to comply with the requests of authorities to cease the disturbance resulted in his being placed in restraints.

Following this occurrence, plaintiff was returned to the general population, and the incident was expunged from his record because no hearing was held within two working days of the incident. *See id.* at ¶ 6; Defendants' Rule 3(g) Statement ("Defs. 3(g)") at ¶ 11; Plaintiff's Affidavit in Opposition to Defendants' Motion ("Pl. Aff. in Opp.") at Appendix 7. On March 14, 1986, plaintiff, once again on a hunger

---

5. The Court has endeavored to sort through plaintiff's extremely confusing motion papers in an effort to determine exactly what facts are in dispute. If plaintiff intended to controvert any of the following facts he has not made a showing sufficient to create a genuine dispute over a material fact on this motion for summary judgment.

In order to withstand a motion for summary judgment, plaintiff has the burden of showing that there is a *genuine* dispute over a *material* issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Here plaintiff has utterly failed to point to any material fact in dispute. More importantly, plaintiff, in over one hundred pages of affidavits and memoranda, has failed to provide the Court with evidence suffi-

cient for a jury to find in his favor at trial. Plaintiff has done no more than state repeatedly and with absolutely no supporting proof, that defendants acted intentionally and with malice. Therefore, summary judgment may be granted in this case. *See id.*

6. Plaintiff has since instituted malpractice lawsuits against three of his former attorneys. *See* Affidavit of Robert P. Leighton ("Leighton Aff.") at 2; Declaration of Gerald McMahon ("McMahon Dec.") at ¶ 15; Defendants' Memorandum of Law ("Defs. Mem.") at 4 n. *.

7. Plaintiff's request for appointment of standby counsel was denied by Chief Judge Motley. *See* Markstein Dec. at ¶ 8.

strike, was placed in administrative detention for failing to obey an order to leave a restricted area, and for refusal to submit to a physical examination for inmates on a hunger strike. *See* Rhoades Dec. at ¶ 8. A hearing was held before the Unit Disciplinary Committee which referred the case to the Institution Disciplinary Committee for an additional hearing. *Id.* at ¶ 8, Ex. E. Five different hearing dates were scheduled, but had to be adjourned for a variety of reasons. *Id.* at ¶ 9, Exs. B(1–5).

On April 11, 1986, plaintiff was transferred to the Federal Correctional Institution in Otisville, New York, pending final transfer to Danbury to complete service of his sentence. *See* Defs. 3(g) at ¶ 14. On May 21, 1986, plaintiff was returned to the MCC to appear for a hearing. *See* Defs. 3(g) at ¶ 14; Rhoades Dec. at ¶ 10. At that time, plaintiff's aforementioned property was, however, on its way to Danbury. *See* Defs. 3(g) at ¶ 14; Declaration of Carlyle I. Holder ("Holder Dec.") at ¶ 4, Ex. B; Rhoades Dec. at ¶ 11. Plaintiff remained at the MCC until his appeal was filed. Thereafter, plaintiff was transferred to Danbury on July 10, 1986. Plaintiff's property apparently arrived at the MCC sometime in the middle of June, 1986, but was not delivered to him. *See* Supplemental Affidavit of Zvi Saar ("Pl. Supp. Aff."). Despite efforts by AUSA Markstein to locate plaintiff's property, plaintiff did not have access to certain items of personal property while he was at the MCC. *See* McMahon Dec. at ¶ 6.

However, all of plaintiff's documents and property had been made available to the attorney representing plaintiff on appeal prior to the time the material was first sent to Danbury. *See id.* at ¶ 5; Markstein Dec. at ¶ 14. All of plaintiff's property, except for property held by the DEA, which is the subject of a separate lawsuit, was returned to plaintiff at Danbury by January 20, 1987.[8] *See* Defs.Mem. at 3 n.*; Holder Dec. at ¶ 4.

During his incarceration at the MCC plaintiff complained of a variety of physical and mental ailments[9] all of which were treated in the course of over twenty five visits to MCC medical personnel. *See* Declaration of Roland Williams, Jr. at ¶¶ 2–7. In addition, plaintiff failed to show up for medical appointments on at least twelve other occasions. *Id.*

## DISCUSSION

### I. *Sovereign Immunity*

Preliminarily, the Court must address the jurisdictional issues raised by defendants. It is unclear whether, in addition to his constitutional claims, plaintiff is also suing under the Federal Tort Claims Act ("FTCA").[10] If he is, then all claims brought under that act must be dismissed. The defense of sovereign immunity is only waived to the extent Congress has, by statute, consented to waive it. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Under the FTCA, sovereign immunity is only waived where the United States is named as a party. *See Myers & Myers*

---

**8.** Plaintiff now contends that additional legal materials, apparently his brief on appeal and other handwritten materials, are being withheld from him and that some papers are missing. *See* Plaintiff's Amended Supplemental Affidavit ("Pl. Amend. Supp. Aff.") at 2. In other papers filed subsequent to that affidavit plaintiff suggests he now has all his materials, *See e.g.,* Plaintiff's Memorandum of Law ("Pl. Mem.") at 7; Plaintiff's Affirmation in Opposition to Defendants' Supplement ("Pl. Affirm. in Opp.") at ¶ 2, that he recently found some of the materials he thought were missing, *See* Plaintiff's Amended and Supplemental Affidavit ("Pl. Amend. & Supp. Aff.") at ¶ 1, and that he only seeks access to other materials for discovery purposes. *See* Pl.Mem. at 7.

Given the extent to which plaintiff continuously contradicts himself in his own affidavits, the Court must accept defendants' claim, supported by affidavits and records, that plaintiff now has all of his property. Therefore plaintiff's claim for injunctive relief is moot.

**9.** For example, plaintiff complains of foot problems, back pain and breathing difficulties. *See* Pl.Aff. in Opp. at 30–32. He now also complains that chest x-rays were not taken. *Id.*

**10.** At one point in his papers plaintiff explicitly eschews any reliance on the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. (1982). *See* Pl. Mem. at 1. At another point plaintiff asserts that he is bringing tort claims. *See id.* at 43.

*Inc. v. United States Postal Service,* 527 F.2d 1252, 1256 (2d Cir.1975); 28 U.S.C. § 1346(b) (1982). Plaintiff has not sued the United States in this case. Thus his FTCA claims must be dismissed.[11]

■ To the extent this action is brought as a *Bivens* action alleging constitutional torts, plaintiff's claims for money damages against the Department of Justice and all defendants in their official capacities must also be dismissed. The doctrine of sovereign immunity prevents this Court from obtaining jurisdiction over *Bivens* actions for money damages against government agencies or officials sued in their official capacity. *See Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir. 1983); *Contemporary Mission Inc. v. United States Postal Service,* 648 F.2d 97, 104 (2d Cir.1981); *Davidson v. C.I.R.,* 589 F.Supp. 158, 162 (S.D.N.Y.1984). Thus, plaintiff's only remaining claims are his *Bivens* claims against the defendants as individuals and his claim for injunctive relief.

## II. *Denial of Access to the Courts*

Plaintiff's first claim alleges that AUSA Markstein and defendants Lansing and May acted intentionally to thwart plaintiff's access to the courts by refusing to allow him access to legal documents and property which would have been useful to plaintiff at his criminal trial and on appeal of his conviction. AUSA Markstein has, in defense of that claim, asserted the doctrines of absolute prosecutorial immunity, qualified immunity, and failure to state a

claim upon which relief can be granted. Defendants Lansing and May join in the last two of these defenses.

■ The defense of absolute prosecutorial immunity is available for those prosecutorial activities that are "intimately associated with the judicial phase of the criminal process." *See Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *Barrett v. United States,* 798 F.2d 565, 571–72 (2d Cir.1986). Unless the prosecutor is acting in a purely investigatory or administrative capacity, he may not be held civilly liable for the commission of a constitutional tort. *See Imbler, supra,* 424 U.S. at 430, 96 S.Ct. at 995. Here, however, AUSA Markstein committed the alleged acts, if at all, while serving as the government's advocate. The decision of whether to turn over certain evidence to the defense, a decision similar to that involved here, is one undertaken in the judicial phase of the criminal process. *See id.* at 425, 96 S.Ct. at 992. Because, AUSA Markstein acted in a prosecutorial capacity, rather than as an investigator or an administrator, he is absolutely immune from suit for any alleged failure to provide plaintiff with access to documents.

■ In addition, plaintiff's claim that the lack of access to his property deprived him of access to the courts is without foundation. In order to make out a claim of lack of access to the courts, plaintiff must show an intentional substantive violation of his Sixth Amendment rights; mere negligence is not enough. *See Morello v. James,* 810 F.2d 344, 348 (2d Cir.1987).

---

11. Assuming plaintiff intended to sue the United States, all but one of his tort claims are barred for failure to exhaust administrative remedies. Under the FTCA, the waiver of sovereign immunity giving this Court jurisdiction to entertain a suit against the United States is only effective if plaintiff first brings a claim for damages before the appropriate government agency, here the Bureau of Prisons. *See* 28 U.S.C. § 2675 (1982); *Wyler v. United States,* 725 F.2d 156 (2d Cir. 1983); *Keene Corp. v. United States,* 700 F.2d 836 (2d Cir.1983).

Although plaintiff was aware of the exhaustion requirement, *see* Rhoades Dec. at ¶ 13, he has filed only one claim for administrative relief, *see* Defs.Mem. at 14; Declaration of Sheree Sturgis. That claim relating to deprivation of

his property was filed with the Bureau of Prisons on July 16, 1986, *see* Holder Dec. at ¶ 5, Ex. G, and was later denied as moot, *id.* at Ex. H. The Court has reviewed plaintiff's complaint to the Bureau of Prisons, and finds that it does not state a state law tort claim, as it must in order to make out a claim under the FTCA. *See* 28 U.S.C. §§ 1346(b), 2674 (1982); *Mack v. United States,* 814 F.2d 120, 123 (2d Cir.1987); *Caban v. United States,* 728 F.2d 68, 72 (2d Cir.1984). Instead, plaintiff alleged the same constitutional tort he alleges here, denial of access to the Courts. *See* Holder Dec. at Exs. G–H. Thus, plaintiff's FTCA claim for deprivation of property, assuming it even exists in this action, must be dismissed.

While plaintiff may not have had the opportunity to review all relevant documents himself, his attorneys were allowed access to the documents and plaintiff himself obtained copies of the tapes and documents from AUSA Markstein.

■ If plaintiff was truly deprived of some relevant evidence he may have grounds for attacking his conviction, but where, as here, plaintiff has done no more than state repeatedly and without foundation that AUSA Markstein set out deliberately and maliciously to deprive him of his property, plaintiff does not make out a claim of denial of access to the courts. *See Contemporary Mission, supra,* 648 F.2d at 107. In addition, the facts here, even as plaintiff states them, show no more than mere negligence on the part of the prison authorities. Mere negligence is not enough to make out a constitutional violation. *See Morello, supra,* 810 F.2d at 348.

Given that plaintiff does not now state a colorable constitutional claim, AUSA Markstein, and defendants Lansing and May, are also shielded by the doctrine of qualified immunity. The doctrine of qualified immunity permits resolution of insubstantial claims on a motion for summary judgment in order to protect government officials from civil liability and costly litigation where their conduct does not violate clearly established rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Since the Court has concluded that there has been no violation of plaintiff's constitutional rights, it also concludes that it could not have been clear at the time these officials acted " 'that the interest asserted by the plaintiff was protected by ... the Constitution.' " *See Walsh v. Franco,* 849 F.2d 66, 69 (2d Cir. 1988) (quoting *Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987)).

## III. *The Administrative Segregation Claim*

Plaintiff also claims that by placing him in administrative segregation without an appropriate hearing defendants Lansing and May denied him his right to due process under the Fifth Amendment. Defendants Lansing and May assert the defenses of qualified immunity, failure to allege personal involvement, and failure to state a claim upon which relief can be granted.

■ The due process clause does not by itself create a protected liberty interest in being kept in the general prison population. *See Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). However, statutes and regulations describing the procedural due process to which a prisoner is entitled, if sufficiently mandatory in character, can create a protected liberty interest. *Id.* at 471–72, 103 S.Ct. at 871. Assuming, without deciding, that the relevant regulations here do create such an interest, the Court finds nonetheless that plaintiff fails to state a claim.

In deciding what procedure is due after a protected liberty interest has been identified, a Court must give the prison authorities wide discretion. *Id.* at 472, 103 S.Ct. at 871. All that is necessary is that the prisoner be afforded an informal non-adversary review within a reasonable time after segregation. *Id.*

Plaintiff points to two instances of administrative detention. The first on February 18, 1986, resulted in plaintiff's return to the general population on February 19, 1986 and removal of the incident from plaintiff's inmate record when a hearing was not held within a reasonable time, *i.e.* two days, after plaintiff was placed in detention. This is clearly a procedure which comports with the requirements of *Hewitt.*

The second detention occurred on March 14, 1986. Thereafter, plaintiff received an initial hearing and was referred expeditiously for a further hearing. The dates for the additional hearing were scheduled but had to be adjourned twice because plaintiff's chosen representative was not available, and once because plaintiff was not available. *See* Rhoades Dec. at ¶ 9. Although the hearing was adjourned on two other occasions and defendants do not offer any reason for those adjournments, plaintiff has offered no proof that defendants adjourned the hearing in an effort to

intentionally deprive him of his due process rights. Where, as here, defendants have acted to schedule a hearing within a reasonable time, and plaintiff alleges facts showing only that a hearing has been adjourned, sometimes at plaintiff's request, there is an insufficient predicate for a claim of constitutional deprivation.

██ In addition, defendants Lansing and May correctly assert that they are entitled to qualified immunity as to this claim. A reasonable person could not have known that the procedures accorded plaintiff, on the facts presented here, would be regarded as violative of due process.

Defendants Lansing and May also assert that plaintiff has failed to allege that they were personally involved in the acts complained of. A plaintiff may adequately allege the requisite personal involvement by asserting that defendants had knowledge of the alleged violations but did nothing to correct them. *See Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986). Here, plaintiff alleges that he informed defendant Lansing by letter and orally of the alleged deprivation. *See* Pl.Mem. at 45. This uncontroverted allegation is sufficient to defeat defendant Lansing's motion for summary judgment on this ground. Although plaintiff has also alleged that defendant May knew of the alleged violation, *see* Pl. Mem. at 45–47, defendant May has averred that he was not responsible for plaintiff while plaintiff was being held in Unit 9 South, and that therefore he had no power to act to remedy the violation, *see* Declaration of George May at ¶ 5. Plaintiff has not contradicted defendant May's assertion. Thus the Court must accept that assertion as true for purposes of this motion. If defendant May had no control over plaintiff's segregation, he cannot be held personally liable for any due process violations arising out of that segregation. This claim against him must, therefore, be dismissed.

### IV. *The Claim of Inadequate Medical Treatment*

Plaintiff alleges that while he was held at the MCC he received inadequate medical treatment constituting cruel and unusual punishment in violation of the Eighth Amendment.

██ In order to make out a violation of a prisoner's Eighth Amendment rights, the relevant action must rise to the level of "an unnecessary and wanton infliction of pain" or be "repugnant to the conscience of mankind." *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). At a minimum, there must be " 'at least some allegation of a conscious or callous indifference to a prisoner's rights.' " *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982), (quoting *Wright v. El Paso County Jail,* 642 F.2d 134, 136 (5th Cir.1981)), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).

██ Here plaintiff has not even approached the showing required by *Estelle.* All that plaintiff has alleged is that his medical problems were improperly diagnosed and treated. At most plaintiff may have alleged malpractice. However, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner". *Estelle, supra,* 429 U.S. at 106, 97 S.Ct. at 292. Thus, plaintiff's allegations of cruel and unusual punishment must be dismissed.[12]

### CONCLUSION

For the reasons set forth above defendants' motion for summary judgment is granted. The clerk is directed to dismiss the complaint and close the above-captioned action.

It is SO ORDERED.

---

12. Plaintiff also has the temerity to allege that his right to privacy has been violated because defendants have used his medical records in support of the instant motion. However, defendants do not violate plaintiff's right to privacy by using his medical records to rebut a claim which has put plaintiff's past medical treatment at issue. Therefore this claim is also dismissed.