**William T. DUFF, Plaintiff,**

v.

**Thomas A. COUGHLIN III, Commissioner, N.Y. Department of Correctional Service; Stephen Dalsheim, Superintendent, Downstate; Donald McLaughlin, First Deputy Superintendent, Downstate; Sawyer, Pucher, Correctional Officers, Downstate Correctional Facility, Defendants.**

**No. 90 Civ. 2505 (VLB).**

United States District Court, S.D. New York.

July 27, 1992.

---

William Duff, pro se.

Toni E. Logue, Asst. Atty. Gen., Office of Atty. Gen., New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, Senior District Judge.

Before this court is plaintiff's civil rights action pursuant to 42 U.S.C. § 1983 against defendant Thomas A. Coughlin, III, ("Coughlin"), Commissioner of the New York State Department of Correctional Services; Stephen Dalsheim ("Dalsheim"), Superintendent at Downstate Correctional Facility ("Downstate"); Donald McLaughlin ("McLaughlin"), First Deputy Superintendent at Downstate, and Correction Officers Sawyer ("Sawyer") and Pucher ("Pucher"). The plaintiff alleges that his Sixth, Eighth and Fourteenth Amendment rights were violated when his legal materials allegedly were destroyed.[1] He asserts that the defendants were part of a conspiracy to impede his access to the courts. Plaintiff seeks judgment against each defendant and monetary damages.

### I.

Plaintiff entered and was processed at Downstate on February 4, 1988.[2] His prop-

---

1. The materials allegedly destroyed were described only generally in both the original petition and in a response to a request by the court for further detail, and are claimed to have consisted of legal materials from two consolidated civil suits, numerous affidavits, a legal research brief from a criminal appeal, as well as news clips. Complt., par. 4(a).

2. Downstate is a correctional facility which serves as a reception center initially to process those persons who have been newly convicted of crimes and sentenced to serve time in the

erty was searched by defendants Sawyer and Pucher. All unauthorized property was either destroyed or shipped home at plaintiff's expense in the amount of $1.34.[3] The UPS Pickup Record indicated that a package was sent to Hubbard at P.O. Box 1341 Riverhead, New York on February 5, 1988 at 4:00 o'clock p.m.[4]

On February 9, 1988 plaintiff filed a grievance claiming that correction officers Sawyer and Pucher deliberately threw away his legal materials. Affidavit in support of Plaintiff's Motion for Summary Judgment, Exhibit D.

The Inmate Grievance Review Committee ("IGRC") reviewed the plaintiff's grievance and reached a deadlocked decision on or about February 17, 1988 concerning what action, if any, was to be taken. The IGRC noted a discrepancy between Officer Sawyer's statement, in which it was asserted that the plaintiff's legal work was not his own and was therefore in the papers shipped home with plaintiff's other unauthorized property,[5] and the Authorization for Disposal of Personal Property Form (the "Property Form")[6] which did not indicate that legal material was contained in the package sent to the plaintiff's home.

On February 19, 1988, after plaintiff's processing into the New York State Correctional System was completed, he was transferred to Great Meadow Correctional Facility.

On February 29, 1988, Superintendent McLaughlin wrote to the IGRC accepting the grievance for consideration since it pertained to institutional policy matters and to an inmate's right of access to the courts. McLaughlin stated that in light of the

amount of postage paid to send the package, it must have contained "more than one certificate and a few emery boards." McLaughlin's letter noted that plaintiff told the IGRC that his family had a duplicate copy of all his legal work.[7]

Plaintiff informed the IGRC that the package which contained his property never reached its destination. On May 12, 1988 the Central Office Review Committee ("CORC") stated that plaintiff's grievance request for the return of his legal papers would be accepted to the extent that Downstate would attempt to trace the package. A shipping tracer form dated June 1, 1988 indicated that the package sent to the "Riverhead, New York address" was returned to Downstate on February 17, 1988. However, Downstate correction personnel were unable to locate the package.

On or about August 28, 1988 the CORC and the New York State Commission of Correction reviewed the policy regarding what constitutes an inmate's own legal work, and stated that higher level supervisory personnel should make such decisions rather than correction officers.

On or about December 28, 1988 Commissioner Coughlin concurred with the determination of the New York State Commission of Correction. On March 2, 1989 a new policy and a new form were implemented, for use in ascertaining if legal material which an inmate possesses upon entering a correctional facility truly belongs to that inmate.

## II.

Plaintiff and defendants have moved for summary judgment pursuant to Rule 56 of

---

New York State correctional system. The initial processing includes an inspection of inmates' property as well as issuance of various clothing and supplies.

3. The Authorization for Disposal of Personal Property Form indicated that all of plaintiff's property was destroyed with the exception of an emery board and a certificate which were sent to plaintiff's home.

4. Hubbard is the maiden name of plaintiff's wife. Her address was correctly listed on the UPS Pickup Record. Dalsheim's Affidavit in

Support of Defendant's Motion for Summary Judgment, Exhibit E.

5. Dalsheim's Affidavit in Support of Defendant's Motion for Summary Judgment, Exhibit D (Statement of T. Sawyer 2/10/88).

6. Dalsheim's Affidavit in Support of Defendant's Motion for Summary Judgment, Exhibit B.

7. Plaintiff states that his "family [does] not have any copies of important documents." Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 3(g).

the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Binder v. Long Island Lighting Co.,* 933 F.2d 187 (2d Cir.1991) (quoting *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988)) (citations omitted). However, a party opposing a properly supported motion for summary judgment may not rest upon mere allegations but must set forth facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

### III.

Defendants may be found liable under 42 U.S.C. § 1983 only if they subjected or caused the plaintiff to be subjected to a deprivation of his constitutional rights. *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976). Here, the complaint did not identify any actual prejudicial effects on plaintiff's legal actions or otherwise from the alleged destruction of materials.[8]

In my order of April 13, 1992 I afforded plaintiff an opportunity to respond to this weakness in his complaint by requesting information as to any actual prejudicial effects on his pending legal actions. In response to that order, he alleged that a number of his constitutional rights were violated but did not set out how his pending legal actions were prejudiced, did not state what efforts if any were made to secure any replacements for the allegedly missing documents, and did not describe what happened to any of the legal actions to which the alleged documents pertained. Plaintiff did not set forth how he was harmed in any concrete or definable way.

Plaintiff's failure to provide any particulars of harm indicates both (a) that no harm necessary to a constitutional claim was experienced, and (b) that the incident alleged did not in fact occur as claimed. If important documents were seized and destroyed, plaintiff, whose typewritten papers are grammatically correct and lucid, would clearly have been able to furnish at least some details of their content and the consequences of their loss. Failure to furnish such details is fatal to his claim, which lacks the factual underpinnings to survive a motion for summary judgment. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Generalities cannot substitute for description of basic facts which the party involved would necessarily know about had they existed.

Additionally, to make out a claim of lack of access to the court, plaintiff must show intentional violation of constitutional rights. *Saar v. United States Department of Justice,* 705 F.Supp. 999, 1004 (S.D.N.Y.1989). Here, plaintiff has not met the burden of showing that the defendants deliberately and maliciously deprived him of legal materials. See *Morello v. James,* 810 F.2d 344, 348 (2d Cir.1987). While negligence resulting from a reckless disregard or deliberate neglect of a problem involving, e.g., lack of necessary training, may rise to constitutional dimension in a proper case, the facts here as alleged by plaintiff in the complaint show no more than sloppy management or mere negligence on the part of the prison authorities. Mere negligence does not constitute a constitutional violation. The overhaul of prison procedures in response to plaintiff's grievance rather than suggesting deliberate disregard of inmate rights, indicates good faith on the part of the authorities.

Plaintiff has failed to show that a reasonable factfinder could conclude that access

---

**8.** Plaintiff's complaint refers to the Sixth Amendment, relating to access to the courts, to the Fourteenth, through which the Bill of Rights is made applicable at least in part to the states and which guarantees liberty and property against denial without due process, and to the Eighth Amendment, barring cruel and unusual punishment.

 

to the courts was denied or actually impeded, or that any deliberate misconduct or pattern of negligence amounting to it was involved.

## IV.

Plaintiff alleges in his affidavit dated June 18, 1991 and in his "3(g) Statement" that the defendants were all part of a conspiracy to impede his access to the courts.[9]

The plaintiff is unable to pursue a conspiracy claim under Title 42 U.S.C. § 1985, as the plaintiff has not alleged that the actions of the alleged conspirators were motivated by racial or class-based discriminatory animus.

■ Conspiracies to deprive a person of his constitutional rights are cognizable under § 1983, which does not require a showing of racial or class-based discrimination as a prerequisite to liability. To support a claim of conspiracy that defendants deprived him of his constitutional rights, the plaintiff must prove that defendants "acted in a willful manner, culminating in an agreement, understanding, or 'meeting of the minds,' that violated plaintiff's rights, privileges, or immunities secured by the Constitution or federal courts." *Katz v. Morgenthau*, 709 F.Supp. 1219, 1231 (S.D.N.Y.), *aff'd in part, rev'd in part*, 892 F.2d 20 (2d Cir.1989). To establish that a conspiracy existed plaintiff must demonstrate that the defendants "agreed" or "reached an understanding" to violate his rights. No facts have been set forth indicating that such an agreement or understanding existed. Plaintiff has not alleged facts indicating that any one of the defendants "agreed" or "reached an understanding" with any one of the other defendants willfully to act to deprive plaintiff of his legal papers, of his access to the courts, or of his access to the inmate grievance process.

## V.

For these reasons, I grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

SO ORDERED.

---

**9.** Plaintiff also makes reference to a conspiracy in his complaint. Complaint, paragraph 5.