**Charles B. MCLAURIN Plaintiff,**

**v.**

**NEW ROCHELLE POLICE OFFICERS; P. Kornas; L. Falcone; B. Fagan; Det. D. Lornegan; Lynch; Lore; Fattah; Martinez; Kamau; Conca; Navarette; O. Moretti; The City of New Rochelle; Dominic Procopio; Patricia Anderson; Timothy Idoni; Mayor City of New Rochelle; the County of Westchester; L. Spano, Westchester County Clerk, Defendants.**

**No. 03–CIV–10037 CM.**

United States District Court, S.D. New York.

May 5, 2005.

Charles B. McLaurin, Downstate Correctional Facility, New Rochelle, NY, pro se.

## DECISION AND ORDER GRANTING MOTION TO DISMISS OF DEFENDANT THE COUNTY OF WESTCHESTER

MCMAHON, District Judge.

Pro se plaintiff, Charles B. McLaurin, brings an action pursuant to 42 U.S.C. § 1983 alleging that defendant, The County of Westchester, violated his federally protected rights. The plaintiff seeks recovery of an unspecified amount of monetary damages. For the reasons stated below, the claim against The County of Westchester is dismissed.

**Background**

This Court has already issued one opinion dismissing this case as to County Clerk Leonard Spano and New Rochelle librarian Patricia Anderson. Familiarity with the underlying facts is assumed. I will briefly recount the facts relevant to the County's motion to dismiss.

On August 6, 2001, after his shift at the New Rochelle Public Library, an ex-girlfriend of the plaintiff came to his apartment to make dinner for him. The plaintiff claims that upon her arrival at approximately 9:00 pm, the two got into a verbal argument. (Am. Cplt. at 1.) The plaintiff alleges that his ex-girlfriend, Annette DeQuatro, refused to leave and became physically violent. The plaintiff did not want to call the police because he was on parole and would have to report any police contact. (Am. Cplt. at 1.)

DeQuatro called the New Rochelle Police Department. Thirty minutes after the call was placed, two New Rochelle police officers arrived at the plaintiff's apartment. Plaintiff told the police to leave the apartment, "the person that called them was behind the doorway and they could talk with [Ms. DeQuatro] in the hallway." (Am. Cplt. at 2.) The police proceeded to enter the home of the plaintiff and search the premises. The plaintiff alleges that a struggle ensued between him and the two police officers. (Am. Cplt. at 2.). Plaintiff alleges that the police officers hit him "in the back of [his] head, neck shoulders and back as hard as [they] could with a metal nightstick." (Am. Cplt. at 2). The police officers then radioed for backup and the plaintiff was subsequently placed under arrest.

Plaintiff was indicted on three counts of assault in the second degree; two counts of criminal possession of a weapon in the third degree; one count of assault in the third degree; one count of resisting arrest; and one count of obstructing governmental administration in the second degree. (Indictment No. 01–1057.) A jury found plaintiff guilty of one county of assault in the third degree.

Out of these facts, plaintiff pleads, in essence, four different claims against the County.

First, Plaintiff alleges that, after being released on bail, he was forced, as a condition of bail, to attend a domestic violence program. He asserts that only he and another black man, LeRoi, were at the program as a condition of bail. The other men in the group were there as a result of a guilty plea for simple assault—in other words, they were already convicted, not pre-trial and thus presumed innocent. (Am. Cplt. at 6.) Like plaintiff, LeRoi also dated a white woman. (Am. Cplt. at 6.) Plaintiff asserts that his bail was conditioned on attendance at the domestic violence program pursuant to a "policy of selectively making mandatory attendance in a Domestic Violence program a condition of bail for some men while sentencing others to the same program after conviction violates Due Process and Double Jeopardy." (Am. Cplt. at 6.) He ascribes this policy to the County.

Plaintiff asserts that he could not timely appeal his assault conviction because the Westchester County Clerk failed to turn over the transcript of the Sandoval Hearing at his request. (Am. Cplt. at 7.) Plaintiff alleges the failure to turn over the transcript was done in bad faith and in an effort to shield the county or a county municipality from liability. (Am. Cplt. at 7.) This court has already dismissed this claim as against County Clerk Spano, because plaintiff, in two tries, failed to allege any facts showing personal involvement by Spano in any failure to produce the transcript.

Next, plaintiff alleges that, as a result of the August 6 arrest, he was the target of a conspiracy by the County of Westchester, the New Rochelle Police Department, and the City of New Rochelle. (Am. Cplt. at 7.) He alleges that the groups have sought to "destroy [him] economically," by caus-

ing (1) his motorcycle to be taken from a New Rochelle municipal lot and sold without notice, (2) loss of his job as a clerk at the New Rochelle Public Library, and (3) a subsequent arrest for allegedly sending Ms. DeQuatro three emails. (Am. Cplt. at 4.)

Finally, plaintiff alleges that he has been maliciously prosecuted by the Westchester County District Attorney's Office in connection with his second arrest for violating the order of protection by emailing Annette DeQuatro. Plaintiff states that when the Westchester County District Attorney's Office "eventually provided [him] with copies of the emails, the emails did not contain the expanded email headers that provide crucial IP information so that one can identify their source." (Am. Cplt. at 5.) He argues that neither [his] computer nor the computer that the emails were allegedly received on were seized or examined by the New Rochelle Police Department or the Westchester County District Attorney. (Am. Cplt. at 5.) He asserts that he was initially charged with a felony (the charges were eventually reduced to a misdemeanor "to insure the Parole Board would find [him] in violation of his parole" and that the judge would revoke his bail.) (Am. Cplt. at 5.) He contends that this maneuvering was the result of the conspiracy by the New Rochelle Police Department, City of New Rochelle, and Westchester County District Attorney to "insure that [he] was financially ruined." (Am. Cplt. at 6.)

The County of Westchester moves to dismiss the complaint on various grounds: (1) failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983; (2) failure to allege the existence of a County policy, custom or practice that caused any deprivation of his federal constitutional or statutory rights; (3) failure to allege facts of conspiracy upon which

relief can be granted; (4) any state law claims are barred for failure to comply with New York State General Municipal Law §§ 50–e, 50–h, and 50–i; and (5) failure to satisfy the "notice" pleading obligations of Fed.R.Civ.P. Rule 8 in that it fails to set forth a short and plain statement of claim showing entitlement to relief.

## Standard of Review

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether Plaintiff is ultimately likely to prevail, but whether he is entitled to offer evidence to support his claims. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998). The court assumes that all factual allegations in the complaint are true, and draws all reasonable inferences in Plaintiff's favor. *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir.2000).

Moreover, when the complainant is proceeding pro se, the court must construe the pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by 'lawyers.'" *Id.* At 520–21, 92 S.Ct. 594 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, where, as here, a plaintiff has been given two opportunities to file a pleading that alleges a claim for relief, dismissal is appropriate if the pleading, even though liberally construed, is nonetheless legally insufficient. This pleading is legally insufficient.

## Discussion

### 1. The Plaintiff Fails to Establish a Policy or Custom of Westchester County that Deprived Him of His Civil Rights Under 42 U.S.C. § 1983

"In order to state a cognizable claim under Section 1983, [plaintiff] must allege conduct under color of state law that deprived him of rights secured by the Constitution or laws of the United States." *Katz v. Klehammer*, 902 F.2d 204, 206 (2d Cir. 1990); *see also Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Under § 1983, a municipality may only be liable for the violation of a person's civil rights if the moving force behind that violation was an official policy or custom of the municipality. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). To withstand a motion to dismiss, a § 1983 complaint must contain specific allegations of fact indicating a deprivation of constitutional rights. *Barr v. Adams*, 810 F.2d 358, 363 (2d Cir.1987).

■ In order to succeed in recovering from a municipality under § 1983, first, the plaintiff "must prove the existence of a municipal policy or custom" that caused his injuries. *See Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985) (citation omitted), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987). Second, the plaintiff must establish a causal connection or 'affirmative link' between the policy and the alleged civil rights violation. *Vippolis*, 768 F.2d at 44.

■ A policy, custom or practice of a municipality may be demonstrated in one of four ways. To satisfy the first prong of the test on a motion to dismiss, McLaurin must allege the existence of either: (1) a formal policy which is officially endorsed by the municipality, (*see Monell*, 436 U.S.

at 690, 98 S.Ct. 2018); (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights, (*see Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials, (*see Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018); or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." (*see City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). McLaurin failed to assert any of these requisite allegations in his amended complaint.

■ McLaurin alleges that two separate policies of Westchester County violated his civil rights. First, he asserts that the County has a policy of treating black men who date white women differently than others accused of domestic violence when it comes to setting the conditions of their bail. (Am. Cplt. at 6.) Additionally, plaintiff alleges the County Clerk had a policy of intentionally losing and/or failing to produce court records that would place liability on the county or a county municipality. (Am. Cplt. at 7.)

Plaintiff's complaint fails because he has not alleged facts tending to show the existence of any policy **of the County.**

*The Setting of Bail is Not a County Function*

Plaintiff's complaint arising out of the alleged bail "policy" is based on a misimpression—a common one—about the relationship between Westchester County and the Westchester County Court. Westchester County does not make or control the making of bail decisions. The setting and conditioning of bail lies solely within the power of the court. N.Y. Criminal Procedure Law § 510.30. *See U.S. ex rel. Diller v. Greco,* 426 F.Supp. 375 (D.C.N.Y. 1977); *People v. Bach,* 61 Misc.2d 630, 306 N.Y.S.2d 365 (1970). And while the court that hears felony matters in Westchester County is called the Westchester County Court, it is not an arm of the County, but part of New York State's Unified Court System. No decision of any judge, even a judge of what is called the County Court, can be charged to the County.

*One Instance of Something Does Not a Policy Make*

Similarly, the allegation that the County allegedly maintains a policy of intentionally losing and/or failing to produce court records fails. Even if the County Clerk's actions as custodian of court records were chargeable to the County (which is not the case) the facts alleged by plaintiff identify only a single instance in which a transcript was lost. A single incident alleged in a complaint generally does not suffice to show a municipal policy. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991). McLaurin's allegation that in one circumstance the County Clerk could not find or failed to produce court records does not suffice as a widespread practice. Nor does it indicate a failure to properly train or supervise.

**2. Westchester County is Not Liable for Prosecutorial Decisions Made By the District Attorney**

■ The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not 'fairly be said to represent official policy' of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy,* 853 F.2d 73 (2d Cir.1988) (citations omit-

ted); *see also Doe v. Smith,* 704 F.Supp. 1177, 1184 (S.D.N.Y.1988). No county policy can require district attorneys to depart from the policy of the state, nor does the county have a right to establish policy concerning how a district attorney should prosecute violations of state criminal laws. *Id.* "Indeed, it would be a violation of a district attorney's ethical obligations as counsel for the State in a criminal proceeding to permit himself to be influenced in the performance of his duties by so-called policies of a county." *Id.* at 77.

Moreover, even if the County were liable for the prosecutorial acts of the District Attorney and her office, no claim would lie, because the District Attorney and individuals employed by her, acting within in their official capacities, are protected by absolute immunity for prosecutorial acts in pursuing a criminal prosecution and presenting the State's case. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

As a result, McLaurin's assertions of malicious prosecution by the Westchester County District Attorney form no basis for county liability.

### 3. The Plaintiff Fails to Allege a Conspiracy

■ Plaintiff alleges, in a wholly conclusory fashion, a conspiracy between the County, the City of New Rochelle, and the New Rochelle Police Department to deny him of his constitutional rights. However, plaintiff does not allege facts sufficient to show the existence of any conspiracy designed to deprive him of his rights. *See Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (diffuse and expansive allegations of a conspiracy to deprive a person of constitutional right are insufficient, unless amplified by specific instances of misconduct.)

Plaintiff asserts that the actions taken against him after the August 6, 2001 arrest could only be the result of a conspiracy, as it "was clearly the result of a coordinated effort by more than one individual." (Am. Cplt. at 8.) He does not, however, plead any facts to support his bare-bones contention. He does not even allege what individual coordinated their efforts. Claims of conspiracy that are vague and provide no basis in fact for the conclusion asserted must be dismissed. *See Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y.1998); *see also Boddie,* 105 F.3d at 862 (an "unsupported, speculative, and conclusory" claim of conspiracy may be dismissed on the pleadings).

Plaintiff has not pled any facts admitting of an inference that there was any "meeting of the minds" among representatives of the County, the City of New Rochelle, and the New Rochelle Police Department in deciding how to charge plaintiff or why. Indeed, plaintiff does not even identify who purportedly acted on behalf of Westchester County in forming the conspiratorial agreement. It could not have been the District Attorney, since she is a state official for the purpose of prosecuting crimes (including charging decisions).

■ To survive a motion to dismiss, plaintiff must include some facts in his complaint tending to show that "defendants 'acted in a willful manner, culminating in an agreement, understanding or "meeting of the minds," that violated [his] rights, privileges, or immunities secured by the Constitution. or federal courts."' *Hameed v. Pundt,* 964 F.Supp. 836, 839 (S.D.N.Y.1997) (quoting *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992) (quoting *Katz v. Morgenthau,* 709 F.Supp. 1219, 1231 (S.D.N.Y.), *aff'd in part, rev'd in part,* 892 F.2d 20 (2d Cir.1989))). He has not done so.

### 4. State Law Claims

Plaintiff's state law claims are governed by New York General Municipal Law § 50–e, 50–h, and 50–i. The New York State County Law § 52 provides that any claim or notice of claim against a county must be made and served in compliance with section 50–e of the general municipal law. Failure to comply with the notice of claim requirements is fatal to the plaintiff's state law claims. Mills v. County of Monroe, 59 N.Y.2d 307, 310, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983).

■ N.Y. Gen Mun. Law 50–e requires that a plaintiff file a notice of claim prior to commencement of an action against a municipality, and must serve the notice of claim within 90 days after the claim arises. The purpose of the notice of claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation. *Brown v. New York City Transit Authority,* 568 N.Y.S.2d 54, 55, 172 A.D.2d 178, 180 (1st Dep't 1991). The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action. *Fincher v. County of Westchester,* 979 F.Supp. 989, 1002 (S.D.N.Y. 1997).

■ A plaintiff's failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims. See *Warner v. Village of Goshen Police Dep't.,* 256 F.Supp.2d 171, 175 (S.D.N.Y.2003); *Hyde v. Arresting Officer Caputo,* 98 Civ. 6722, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001). Plaintiff's notice of claim for false arrest and false imprisonment regarding both criminal matters is defective because notice was filed more than ninety (90) days after his release. N.Y. Mun. Law § 50–e(1)(a). Plaintiff's failure to file a notice of claim within 90 days bars him from asserting these claims.

### 5. A municipality is immune from punitive damages under § 1983.

Since no claim lies against Westchester County, the issue of punitive damages is moot. However, it is well settled that a municipality is immune from punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 248, 101 S.Ct. 2748, 2750, 69 L.Ed.2d 616 (1981) (finding nothing in the legislative history suggesting that, in enacting § 1 of the Civil Rights Act of 1871, Congress intended to abolish the doctrine of municipal liability from punitive damages). In *Ciraolo v. City of New York,* the Second Circuit reversed an award of punitive damages against the City stating that "the only fair reading of [City of Newport] mandates a conclusion that punitive damages are not available" against municipal defendants. *Ciraolo v. City of New York,* 216 F.3d 236, 238 (2nd Cir.2000).

For all of the above reasons, the County of Westchester's motion to dismiss is granted and the claim dismissed with prejudice.