Richard L. FINCHER, Plaintiff,

v.

THE COUNTY OF WESTCHESTER, the Village of Ossining, Victor Cruz, Daniel J. Slater, Randy Jefferson, Richard Lint, Thomas Reddy, Jack Keegan, Patrolman Foley, Officer Diego, Lieutenant Peabody, Lieutenant Sullivan, Sgt. John Greenan, Robert Mione and Susan Utsch, Defendants.

No. 93 CIV. 1844(WCC).

United States District Court,
S.D. New York.

Sept. 24, 1997.

As Amended Sept. 26, 1997, nunc pro tunc Sept. 24, 1997.

Law Offices of Joseph M. Buderwitz, White Plains, NY (Joseph M. Buderwitz, of counsel), for Plaintiff.

Marilyn J. Slaatten, Westchester County Attorney, White Plains, NY (Ted A. Novick, Asst. Cty. Atty., of counsel), for Defendants The County of Westchester and Victor Cruz.

Boeggeman, George, Hodges & Corde, P.C., White Plains, NY (Leslie K. Arfine, of counsel), for Defendants The Village of Ossining and All Other Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Richard L. Fincher brings this action against fifteen separate defendants, asserting eight causes of action under 42 U.S.C. Sections 1983 and 1985 for various alleged deprivations of his civil rights. Plaintiff also asserts five additional causes of action based on state law. Defendants moved for summary judgment; on February 26, 1996 Magistrate Judge Lisa Margaret Smith issued a Report and Recommendation, recommending that summary judgment be granted in part and denied in part. Fincher and defendants have filed objections in this Court to the Report and Recommendation, which we have considered pursuant to Fed. R.Civ.P. 72(b). As detailed hereinafter, we affirm the Report and Recommendation in substantial part, although in some instances for reasons other than those given by Magistrate Judge Smith.

### Background

This action essentially alleges two separate improper incidents involving various defendants and an overarching conspiracy on the part of all fifteen defendants. Two of the defendants, the County of Westchester ("Westchester") and the Village of Ossining ("Ossining"), are municipal corporations organized pursuant to New York law. The

remaining defendants are all law enforcement officers. The first individual defendant, Victor Cruz, was at all relevant times employed as a Westchester police officer. The other individual defendants—Daniel Slater, Randy Jefferson, Richard Lentz, Thomas Reddy, Jack Keegan, James Foley, Santiago Diego, John Quartucio, William Sullivan, John Greenan, Robert Mione, and Susan Utsch [1]—were at all relevant times employed by Ossining as police officers of various ranks.

### I. 1991 Drug Charge

Fincher, an African–American, was arrested on October 1, 1991 by defendants Slater and Jefferson pursuant to a warrant issued by a Westchester County Supreme Court Justice on the basis of a grand jury indictment. The indictment was based on the testimony of defendant Cruz that on May 30, 1991, while working as an undercover narcotics officer, he had purchased in two separate transactions a total of six vials of crack cocaine from an individual whom Cruz later identified as Fincher. The alleged sales took place in Ossining. Although Fincher was initially convicted following a non-jury trial before Westchester County Supreme Court Justice Jeanine Ferris Pirro, subsequently the conviction was vacated and the indictment dismissed on the basis of newly discovered evidence supporting Fincher's alibi that he had been in Washington, D.C. at the time of the alleged drug sales. As a result of the May 30, 1991 drug charge, Fincher was incarcerated for almost six months.

Based on these events, Fincher asserts three federal and three state claims. First, Fincher asserts that Cruz violated his constitutional rights by committing perjury before the grand jury and thereby subjecting Fincher to false arrest, false imprisonment, and malicious prosecution. (*See* Am. Compl. ¶ 66

---

1. The following defendants are improperly or incompletely named in the caption:

 (1) Victor Cruz (sued herein as "Victor Cuiz");

 (2) Richard Lentz (sued herein as "Richard Lint");

 (3) James Foley (sued herein as "Patrolman Foley");

 (4) Santiago Diego (sued herein as "Officer Diego");

 (5) John Quartucio (sued herein as "Lieutenant Peabody");

 (6) William Sullivan (sued herein as "Lieutenant Sullivan").

(*See* Affirmation of Leslie K. Arfine, dated Sept. 29, 1994, at 2, attached to Ossining Defs.' Notice of Motion for Summary Judgment.)

("First Claim").) Second, Fincher alleges that his indictment and arrest resulted from a conspiracy among Cruz, Slater, Jefferson and Lentz to intimidate him and deprive him of various constitutional rights. Fincher seeks to hold Westchester and Ossining, in addition to these four individual defendants, liable for this alleged conspiracy. (*See id.* ¶ 74 ("Fifth Claim").) Third, based on the alleged actions of Cruz, Slater, Jefferson, and Lentz, Fincher claims that Westchester and Ossining each maintained a policy of deliberate indifference to constitutional rights. (*See id.* ¶ 70 ("Third Claim").) Fourth, Fincher seeks to hold Westchester, Ossining, Cruz, Slater, Jefferson, and Lentz liable under state law for false arrest, false imprisonment, and wrongful detention. (*See id.* ¶ 81 ("Eighth Claim").) Fifth, Fincher claims that these same six defendants are liable under state law for malicious prosecution. (*See id.* ¶ 85 ("Tenth Claim").) Finally, Fincher asserts that Westchester and Ossining negligently hired, trained, and/or supervised these four officers. (*See id.* ¶ 89 ("Twelfth Claim").) Magistrate Judge Smith recommended that summary judgment be granted to defendants on all claims arising from the 1991 drug charge.

## II. *1993 Robbery Charge*

The second main incident on which this action is based involves Fincher's arrest by Ossining police pursuant to a March 30, 1993 felony complaint charging Fincher with first degree robbery. The complaint was signed and filed by defendant Susan Utsch, and witnessed by defendant John Greenan, purportedly on the basis of a "supporting deposition of James Harris and police investigation." (Felony Complaint, dated March 30, 1993, Pl. Exh. 10.) Attached to the complaint is a supporting deposition bearing the signature "Jimmy Harris" and witnessed by defendant Robert Mione. The supporting deposition charges that Fincher knocked Harris off a bicycle, grabbed Harris's gold necklace and Walkman, brandished a knife, forcibly took a gold ring off Harris's finger, and drove off in a black Cadillac. However, on April 22, 1993 Harris swore out an affidavit stating that Fincher had never robbed him and that he had never complained to the police or signed a supporting deposition. In his affidavit, Harris asserts that he took Fincher's bicycle, that a fight ensued in which his necklace "came off" his neck, his Walkman "fell," and his ring "came off" his finger, and that Fincher then rode off on the bike. (Harris Aff. at 3, 5, Pl. Exh. 11.) The affidavit also avers that upon returning home after the fight and telling his girlfriend what had happened, she called the police and told them about the incident. (*Id.* at 3–4.)

Fincher alleges that the March 30, 1993 felony complaint was a forgery created to once again bring false charges against him. Based on this incident, Fincher again asserts three federal and three state claims. First, he claims that Greenan, Mione, and Utsch violated his constitutional rights by forging Harris's name on the felony complaint, thereby subjecting Fincher to false arrest, false imprisonment, and malicious prosecution. (*See* Am. Compl. ¶ 68 ("Second Claim").) Second, Fincher alleges that this incident resulted from a conspiracy among Greenan, Mione, and Utsch to deprive Fincher of various constitutional rights. Fincher seeks to hold Ossining, in addition to these three individual defendants, liable for this alleged conspiracy. (*See id.* ¶ 76 ("Sixth Claim").) Third, based on the alleged actions of Greenan, Mione, and Utsch, Fincher contends that Ossining maintained a policy of deliberate indifference to constitutional rights. (*See id.* ¶ 72 ("Fourth Claim").) Fourth, Fincher seeks to hold Ossining, Greenan, Mione, and Utsch liable under state law for false arrest, false imprisonment, and wrongful detention. (*See id.* ¶ 83 ("Ninth Claim").) Fifth, Fincher contends that these same four defendants are liable under state law for malicious prosecution. (*See id.* ¶ 87 ("Eleventh Claim").) Finally, Fincher claims that Ossining negligently hired, trained, and/or supervised Greenan, Mione and Utsch. (*See id.* ¶ 91 ("Thirteenth Claim").) Magistrate Judge Smith recommended that summary judgment be granted to defendants as to some of these claims and denied as to others.

## III. *Overarching Conspiracy Charge*

Fincher also claims that the 1991 drug charge and the 1993 robbery charge were part of a larger conspiracy to deprive him of

his constitutional rights. Beyond these two incidents in themselves, Fincher alleges that the Ossining defendants conspired among themselves and with unnamed third parties to harass and intimidate him. Fincher maintains that this alleged conspiracy, which consisted largely of verbal and physical threats and racial epithets, was racially motivated. This pattern of harassment allegedly began shortly after the criminal proceedings stemming from the 1991 drug charge were terminated on March 23, 1992, and intensified after Fincher filed a Notice of Claim against Ossining on June 11, 1992. (*See* Am. Compl. ¶¶ 78–79 ("Seventh Claim").) With respect to the overarching conspiracy claim, Magistrate Judge Smith recommended that summary judgment be granted in favor of Westchester and partially granted in favor of Ossining.

## Discussion

### I. *Standard of Review*

Magistrate judges are empowered by statute to preside over pretrial matters upon appointment by a district court judge. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Once a magistrate judge has made a recommendation, the district judge must make a de novo determination of those portions of the magistrate judge's disposition to which specific written objections have been made. § 636(b)(1); Fed.R.Civ.P. 72(b); *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). The district judge may base his review solely on the record or may take additional evidence. § 636(b)(1); Fed.R.Civ.P. 72(b). After conducting its review, the court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. § 636(b)(1); Fed.R.Civ.P. 72(b). The district court also may accept any portion of the magistrate judge's disposition to which no objection has been made as long as it is not erroneous on the face of the record. Fed.R.Civ.P. 72, Advisory Committee Notes; *Brown v. Department of Health & Human Servs.*, 913 F.Supp. 254, 255 (S.D.N.Y.1996).

Since we review Magistrate Judge Smith's Report and Recommendation de novo, we are in essence governed by the standards for awarding summary judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(d). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the non-moving party. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. At this stage, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

### II. *Review of Magistrate Judge Smith's Report and Recommendation*

#### A. *1991 Drug Charge*

All of Fincher's claims arising out of the 1991 drug charge stem from a central allegation: that Westchester and Ossining police officers conspired to falsely implicate Fincher in two drug buys. In a nutshell, Fincher

claims that as part of a larger conspiracy to frame him: (1) Officer Cruz knowingly falsely identified Fincher to the grand jury as the person from whom Cruz had purchased drugs, and (2) Ossining officers conspired with Cruz in this frame-up.

The components of Fincher's "perjury conspiracy" are as follows. First, Fincher maintains that Cruz intentionally lied when identifying Fincher as the drug seller. He points to Cruz's alleged failure to tell the criminal jury, when "extensively questioned" about Fincher's distinctive facial features, that Fincher has four gold teeth. (Lichter Aff. ¶ 8, Pl. Exh. 8.) Under this "gold teeth" theory, Fincher argues that because his gold teeth are his "most distinctive, facial characteristic," Cruz would have immediately recalled this detail if Fincher had in fact been the person who sold the drugs. (Buderwitz Aff. ¶ 15.) Instead, Fincher asserts, Cruz failed to mention the gold teeth because Cruz had never seen him other than in the photograph—a photograph of him with his mouth closed. (See id. ¶ 16.)

Second, Fincher alleges that shortly after 9:00 p.m. on May 30, 1991, after making the second of two undercover drug transactions with an unidentified individual, Cruz contacted Detective David See of the Ossining Police Department and provided a physical description of the person with whom he had transacted. Detective See recorded the conversation in notes and then, at 10:30 p.m., followed up with a written report identifying Fincher as the suspect. (See Pl. Exh. 2.) Third, Fincher alleges that Ossining officers "Slater, Jefferson, and/or [Lentz]" provided Cruz with a photograph of Fincher taken at the Ossining jail that Cruz then used to identify Fincher before the grand jury. (Am. Compl. ¶ 29.) Fourth, and finally, Fincher contends that Ossining officers knew about the sealed indictment before his October 1, 1991 arrest. (See Revised 3(g) Statement of Pl.'s Counsel, dated April 28, 1995, ¶ 7; Fincher Aff. ¶ 8; Pl.'s Objections to Report and Recommendation of Magistrate Judge ¶¶ 9, 11.) Based on these purported proofs, Fincher concludes that Cruz and Ossining police conspired to falsely identify Fincher as Cruz's seller.

In order to prevail under § 1983, a plaintiff must initially prove an actual violation of his federal rights. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970)), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). For this reason, all of Fincher's claims stemming from the 1991 drug charge depend upon whether he can establish that Cruz committed perjury, and thus that his subsequent arrest, prosecution, conviction, and imprisonment were unconstitutional. Despite drawing all inferences in favor of Fincher, as we must, we find that he has failed to demonstrate a genuine issue of material fact with respect to his allegation that Cruz committed perjury.

We agree with Magistrate Judge Smith that Fincher's evidence supports no more than the conclusion that Cruz mistakenly identified the drug seller. To begin with, Fincher's "gold teeth" theory is just that—a theory, unsupported by sufficient fact. Even were we to credit the affidavit of Fincher's criminal attorney as an accurate reflection of Cruz's testimony[2]—that is, even if we assume that, when questioned about Fincher's facial features, Cruz did not mention the gold teeth—Fincher has still failed to offer evidence of anything more than a misidentification. The "gold teeth" theory does not shed light on whether Cruz told the grand jury that Fincher sold him drugs, knowing that Fincher had not.

Fincher attempts to buttress his allegation that Cruz perjured himself with what Fincher considers proof of a conspiracy between Cruz and Ossining officers to frame him. In order to establish a conspiracy claim under § 1983, Fincher must show that these defendants "acted in a willful manner, culminating in an agreement, understanding, or 'meeting of the minds,'" to violate his rights. *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992). Moreover, to support a conspiracy claim under § 1985(3), Fincher must demonstrate an invidiously discriminatory racial animus behind the conspiracy. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct.

2. Fincher did not provide this Court with a transcript of Cruz's testimony.

1790, 1798, 29 L.Ed.2d 338 (1971); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994).

Fincher has failed to demonstrate a genuine issue as to the alleged Westchester–Ossining conspiracy. Initially, we note that with respect to defendants Slater, Jefferson, and Lentz, there is no evidence whatsoever of their involvement, either invidious or benign, in anything related to the 1991 drug charge. Nor do the facts offered by Fincher as proof of a conspiracy between Cruz and other, unnamed Ossining officers support his allegation of perjury. At most, the notes and report of Detective See (who is not a defendant and was not deposed by Fincher) demonstrate routine contact between the Westchester and Ossining police departments in exercising their duties. Similarly, even if the photograph with which Cruz identified Fincher was taken at the Ossining jail, as Fincher asserts, that fact is not probative of any improper collusion between Cruz and Ossining, let alone of whether Cruz committed perjury.

Moreover, Fincher's assertion that at least one Ossining police officer knew of his indictment before his arrest also fails to support a "perjury conspiracy." In their motion for summary judgment, the Ossining defendants explained that on October 1, 1991 (the day of Fincher's arrest) Westchester requested Ossining's assistance in conducting a "drug sweep" involving a number of Ossining residents for whom sealed indictments had been issued. In order to execute the arrest warrants effectively, Westchester furnished the Ossining Police Department with a list of these residents and requested Ossining's assistance in locating them. Two Ossining policemen, defendants Slater and Jefferson, were directed to execute the Westchester warrants. (Ossining Defs.' Memorandum of Law in Support of Motion for Summary Judgment, at 2.) Fincher has failed to demonstrate that this procedure was improper or, even if it was, that it has any bearing on whether Cruz committed perjury.

In short, Fincher has provided only the flimsiest circumstantial evidence to support his allegations that Cruz knowingly falsely identified Fincher to the grand jury and that the Ossining police colluded with Cruz in this frame-up. Fincher's speculation about a "perjury conspiracy" is insufficient to meet his burden of setting forth specific facts showing a genuine issue for trial. Accordingly, because the assumption of Cruz's perjury is the foundation upon which all other federal and state claims arising out of the 1991 drug charge are based, Fincher has failed to demonstrate a genuine issue for trial with respect to those claims. Therefore, we adopt Magistrate Judge Smith's recommendation and grant the motions for summary judgment in favor of all relevant defendants as to all claims stemming from the 1991 drug charge.

### B. *1993 Robbery Charge*

Like the claims arising out of the 1991 drug charge, those arising out of the 1993 robbery charge hinge on a central allegation. Here, Fincher's main assertion is that defendants Greenan, Mione, and Utsch colluded to fabricate a felony complaint and supporting deposition charging Fincher with robbery. As a result, Fincher claims that he was subjected to false arrest, false imprisonment, and malicious prosecution in violation of his rights under the Fourth and Fourteenth Amendments and state law. He also asserts that this conduct constituted a conspiracy in violation of the Fourth and Fourteenth Amendments. Additionally, Fincher seeks to hold Ossining liable for this alleged conduct based on its deliberate indifference to his constitutional rights and its negligence in hiring, training, and/or supervising its officers.

We begin by observing that in order to prevail under § 1983, a plaintiff initially must prove an actual violation of his federal rights. *Singer,* 63 F.3d at 119 (citing *Adickes,* 398 U.S. at 150, 90 S.Ct. at 1604–05). More specifically, plaintiffs bringing § 1983 claims that are premised on their arrest and/or subsequent prosecution must establish a violation of the Fourth Amendment. *See id.* at 115 (citing *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). Here, Fincher alleges that defendants Greenan, Mione, and Utsch violated his Fourth Amendment rights by forging the felony complaint and supporting deposition on which his 1993 arrest and prosecution on

robbery charges were based. The first issue, then, in determining whether Fincher has sufficiently established a constitutional violation—and, indeed, in initially determining the viability of all other claims arising out of the 1993 robbery charge—is whether Fincher has presented sufficient evidence of forgery to withstand summary judgment.

### 1. *Forgery*

■ As explained in greater detail above, Fincher alleges that the March 30, 1993 felony complaint charging him with first degree robbery was based on a forged supporting deposition. The complaint was signed and filed by defendant Utsch and witnessed by defendant Greenan. The supporting deposition, witnessed by defendant Mione, contains a typed statement by "James Harris" of "35 Snowden Avenue" and bears the signature "Jimmy Harris." As proof of forgery, Fincher offers the April 22, 1993 affidavit of "James Harris" of "35 Snowden Avenue," in which Harris not only denies that Fincher robbed him, but also asserts that he never complained to the police or signed a supporting deposition. The affidavit is signed by "James Harris."

Fincher alleges that as a result of the felony complaint, he was arrested and incarcerated pursuant to a bench warrant issued by the Village of Ossining Justice Court. (Am. Compl, ¶ 61.) He states that while criminal proceedings were pending, Harris informed the Justice Court that he never signed the supporting deposition and that the assertions contained in the deposition were false. (*Id.* ¶ 62.) Finally, Fincher claims that on or about May 25, 1993, "after the Westchester County District Attorney's office conducted its own investigation and determined that the charges against [Fincher] were fabricated, the charges were dismissed." (*Id.* ¶ 63.)

In opposition, defendants present a report issued by Dwight R. Howes, a documents examiner employed by the New York State Police Headquarters Crime Laboratory. Based on a comparison of the signature on the March 30, 1993 supporting deposition with fifteen known signatures of James Harris, the report concludes that the signature on the deposition was indeed that of Harris. (*See* Ossining Defs.' Notice of Motion, Exh.

Q; Ossining Defs.' Memorandum of Law in Support of Motion for Summary Judgment, at 5–6.)

Drawing all inferences in favor of Fincher, as we must, and without weighing the credibility of the parties' evidence, as we must not, we conclude that a genuine issue of material fact exists with regard to the legitimacy of Harris's signature. The conflicting evidence requires resolution by a trier of fact and thus precludes summary judgment on this point.

Having concluded that Fincher has met his burden of establishing a material factual question as to whether defendants Greenan, Mione, and Utsch violated his Fourth Amendment rights, we now evaluate Fincher's other claims based on this alleged violation.

### 2. *False Arrest and False Imprisonment*

■ Fincher asserts claims for false arrest and false imprisonment pursuant to both § 1983 and state law. Under New York law, the torts of false arrest and false imprisonment are synonymous. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991) (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 334 N.Y.S.2d 632, 638, 285 N.E.2d 871, 874–75 (1972)). In addition, a claim for false arrest under § 1983 is substantially the same as a claim for false arrest under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Singer*, 63 F.3d at 118. Under both § 1983 and state law, then, the elements of a false arrest claim are: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer*, 63 F.3d at 118 (citing *Broughton v. New York*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314 (1975)). With respect to the fourth element, there can be no claim for false arrest where the arresting officer had probable cause. *Id.* at 118; *Broughton*, 373 N.Y.S.2d at 95, 335 N.E.2d at 315.

■ Fincher's false arrest claim cannot withstand summary judgment because he has failed to satisfy the first and fourth elements. First, Fincher has offered no evidence as to

who, if anyone, arrested him. He thus has not shown that defendants Greenan, Mione, or Utsch "intentionally confined" (*i.e.*, arrested or seized) him. Second, because the identity of the arresting officer or officers is unknown, there is no indication that they lacked probable cause to arrest Fincher. Even if the felony complaint and supporting depositions were phony, whoever arrested Fincher did not necessarily know that. Therefore, the fourth false arrest element also is not met. Accordingly, we adopt Magistrate Judge Smith's recommendation and grant summary judgment in favor of defendants Ossining, Greenan, Mione, and Utsch with respect to Fincher's § 1983 and pendent state false arrest claims.

### 3. *Malicious Prosecution*

■ A claim of malicious prosecution under § 1983 involves a two-step inquiry. First, the court must determine whether the plaintiff's injuries were caused by a deprivation of liberty in violation of the Fourth Amendment. *Singer,* 63 F.3d at 116. Second, if the court finds that the plaintiff suffered a constitutional injury, it must determine whether the defendant's conduct was tortious under state law. *Id.*

■ With respect to the first prong, because the Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable or unwarranted restraints on personal liberty, the plaintiff must "show some deprivation of liberty consistent with the concept of 'seizure.'" *Id.* Moreover, the seizure must have been effected "pursuant to legal process." *Id.* at 117 (quoting *Heck v. Humphrey,* 512 U.S. 477, 483, 114 S.Ct. 2364, 2370–71, 129 L.Ed.2d 383 (1994)). This "legal process" often is in the form of a warrant, in which

case the arrest itself may constitute the seizure. *Id.* (citing *Broughton,* 373 N.Y.S.2d at 94, 335 N.E.2d at 314–15). In this case, Fincher appears to have been arrested pursuant to a warrant,[3] and thus has established a constitutional injury.

■ Turning to the second prong, the elements of a malicious prosecution claim under New York state law are: (1) the defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the defendant initiated the criminal proceeding out of malice. *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994); *Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1250 (1983).

There is no dispute as to the first element. Whether the supporting deposition was forged or not, Utsch filed and signed the felony complaint, Greenan witnessed Utsch's signature, and Mione witnessed the supporting affidavit, thereby commencing the criminal proceeding against Fincher. *See Rounseville v. Zahl,* 13 F.3d 625, 629–30 (2d Cir.1994) (citing *DeFilippo v. County of Nassau,* 583 N.Y.S.2d 283, 284, 183 A.D.2d 695, 696 (2d Dep't 1992) (defendants commenced criminal proceeding by swearing out accusatory instrument)); *Covington v. City of New York,* No. 94–4234, 1997 WL 370628, at *3 (S.D.N.Y. July 1, 1997) (defendant officer commenced criminal proceeding by filing felony complaint).

■ The second element—whether the proceeding terminated in Fincher's favor—presents greater difficulty. A determination in favor of the accused on the merits—*i.e.,* an acquittal—constitutes a favorable

---

**3.** We note, however, that this is not entirely clear. Fincher's Amended Complaint alleges that the felony complaint led to a bench warrant pursuant to which he was arrested and incarcerated. (Am. Compl. ¶ 61.) Although the Ossining defendants generally deny this allegation, (Ossining Defs.' Answer to Am. Compl. ¶ 5), they have not contended that there is a genuine dispute as to the matter and have provided no contrary evidence. The only proof offered by Fincher of any proceedings after the filing of the felony complaint are (1) the statement in his affidavit that he was eventually "acquitt[ed]" of the rob-

bery charges, (Fincher Aff. ¶ 3); (2) the statement in his attorney's affidavit that Fincher was "thereafter arrested pursuant to said criminal filing, spent a short time in jail, but again was acquitted by the Ossining Justice Court," (Buderwitz Aff. ¶ 26); and (3) the notice of claim he filed with Ossining stating that "the charges were dismissed by the Village Court of Ossining," (Notice of Claim, dated July 28, 1993, Pl. Exh. 9). Taking this evidence to be true and drawing all reasonable inferences in Fincher's favor, we presume that he was arrested pursuant to a warrant.

termination for purposes of a malicious prosecution claim. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995). Where a termination is not based on the merits, the inquiry focuses on "whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989); *see also Russell*, 68 F.3d at 36. If the grounds for the dismissal of the criminal proceeding remain unclear, a question of fact generally exists and summary judgment is inappropriate. *Murphy v. Lynn*, 118 F.3d 938, 950–51 (2d Cir.1997); *Russell*, 68 F.3d at 37; *Rounseville*, 13 F.3d at 629.

In the instant case, the record does not clearly disclose the nature of and reason for the termination of the criminal proceedings. The affidavits of Fincher and his attorney state that Fincher was "acquitted" of robbery charges. (*See* Fincher Aff. ¶ 3; Buderwitz Aff. ¶ 26.) Elsewhere, however, Fincher indicates that the charges were "dismissed." His Amended Complaint states that the robbery charges were "dismissed" on or about May 25, 1993 "after the Westchester County District Attorney's office conducted its own investigation and determined that the charges against [Fincher] were fabricated." (Am. Compl. ¶ 63.) Similarly, the notice of claim Fincher filed with Ossining states that the "charges were dismissed by the Village Court of Ossining on or about May 25, 1993." (Notice of Claim, dated July 28, 1993, Pl. Exh. 9.) Other than these statements, Fincher has offered no documentary proof that he was acquitted, that the charges were otherwise dismissed and the reason for such dismissal, or even that the matter proceeded any further than the felony complaint. Nevertheless, the Ossining defendants provide no evidence to the contrary; indeed, their motion papers make no mention of the issue.[4] Therefore, at the very least, there is a material question of fact as to whether the robbery proceedings terminated in Fincher's favor.

We also find the third element, lack of probable cause, to be a triable issue. Probable cause is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting" the suspect. *Rounseville*, 13 F.3d at 629 (quoting *Pandolfo v. U.A. Cable Systems*, 568 N.Y.S.2d 981, 982, 171 A.D.2d 1013, 1013 (4th Dep't 1991)). Once a local criminal court, after holding a preliminary hearing on a felony complaint, determines that the action should be held over for a grand jury probable cause is presumed.[5] *Landsman v. Moss*, 519 N.Y.S.2d 262, 263, 133 A.D.2d 359, 360 (2d Dep't 1987); *Gisondi v. Town of Harrison*, 507 N.Y.S.2d 419, 422, 120 A.D.2d 48, 53 (2d Dep't 1986), *aff'd*, 72 N.Y.2d 280, 532 N.Y.S.2d 234, 528 N.E.2d 157 (1988). This presumption may be overcome only by evidence of bad faith such as fraud, perjury, or falsification, misrepresentation, or withholding of evidence. *Maxwell v. City of New York*, 554 N.Y.S.2d 502, 505, 156 A.D.2d 28, 34 (1st Dep't 1990); *Gisondi*, 507 N.Y.S.2d at 422, 120 A.D.2d at 53.

Although the record does not clearly indicate what action, if any, was taken upon the felony complaint, this shortcoming need not detain us. If the felony complaint was dismissed at a preliminary hearing, we would not presume probable cause. The competing evidence, then, of the Harris affidavit and the expert handwriting analysis presents a genuine issue as to whether defendants falsified the evidence upon which the probable cause determination depends. If, as Fincher's assertion that he was "acquitted" would suggest, Fincher was brought before a grand jury, the presumption of probable cause would attach regardless of the grand jury's determination. *Cf. Gisondi*, 532 N.Y.S.2d at 236, 528 N.E.2d at 159 (presumption of probable cause not overcome by fact that grand jury later votes to dismiss charges). Nevertheless, Fincher's offer of the Harris affidavit overcomes the presumption for summary

---

4. In their answer, the Ossining defendants denied knowledge sufficient to form a belief as to Fincher's claim that the robbery charges were dismissed. (Ossining Defs.' Answer to Amended Compl. ¶ 4.)

5. When a felony complaint is filed in a New York criminal court, at the request of the defendant the court must provide a preliminary hearing on the issue of the sufficiency of the evidence to warrant holding a defendant for grand jury action. N.Y.Crim.Proc.L. §§ 180.10, 180.60, 180.70 (McKinney 1993).

judgment purposes by raising a genuine question regarding evidence falsification. Although defendants counter with an expert report concluding that Harris's signature is genuine, the relative weight to be accorded to the parties' evidence is a task for a trier of fact.[6] *Cf. Melito v. City of Utica,* 620 N.Y.S.2d 648, 649, 210 A.D.2d 888, 888–89 (4th Dep't 1994) (summary judgment precluded in false arrest action where genuine factual dispute existed as to whether arresting officers misrepresented or falsified statements in supporting depositions).

■■■ Finally, Fincher has also met his summary judgment burden with respect to the fourth and final element, actual malice. To establish actual malice, a plaintiff must show that the defendant "commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Rounseville,* 13 F.3d at 631 (quoting *Nardelli v. Stamberg,* 44 N.Y.2d 500, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975, 976 (1978)). Actual malice may be inferred from a lack of probable cause. *Id.; Martin v. City of Albany,* 42 N.Y.2d 13, 396 N.Y.S.2d 612, 614–15, 364 N.E.2d 1304, 1308 (1977). Generally, lack of probable cause raises an inference of malice sufficient to withstand summary judgment. *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 131–32 (2d Cir.1997). Having presented a genuine dispute as to probable cause, Fincher has also raised a triable issue of the existence of actual malice. *See Rounseville,* 13 F.3d at 631.

Accordingly, we find that a reasonable fact finder could conclude that Fincher's evidence is sufficient to meet the four elements of the New York malicious prosecution test. However, before we can decide whether to deny summary judgment as to the malicious prosecution claim, we must consider whether defendants, even if shown to have maliciously prosecuted Fincher, are nonetheless entitled to qualified immunity from damages liability.

■■■ As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established statutory or constitutional rights, or (2) it was objectively reasonable for them to believe, even if mistakenly, that their acts did not violate those rights. *Ricciuti,* 124 F.3d at 127–28. Of course, the right to be free from arrest or prosecution in the absence of probable cause has long been a clearly established constitutional right. *Id.; Golino v. City of New Haven,* 950 F.2d 864, 871 (2d Cir.1991). Therefore, in order to be entitled to summary judgment on their qualified immunity defense, defendants must adduce facts such that no reasonable jury, viewing the evidence and drawing all inferences in favor of Fincher, could conclude that it was not objectively reasonable for defendants to believe their conduct did not violate Fincher's right to be arrested and prosecuted only upon probable cause. *Ricciuti,* 124 F.3d at 128; *see Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir.1994) (although immunity ordinarily should be decided by the court as a matter of law, "that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required").

■■■ As discussed above, we have found that a disputed issue of fact exists regarding whether defendants Greenan, Mione, and Utsch falsified the felony complaint and supporting deposition. In light of this factual dispute, we cannot determine as a matter of law that those defendants reasonably believed their conduct to be constitutional. Therefore, Magistrate Judge Smith's recommendation is adopted and summary judgment is denied to defendants Greenan, Mione, and Utsch with respect to the § 1983 and pendent state malicious prosecution claims arising out of the 1993 robbery charge.

### 4. *Conspiracy*

Fincher alleges that the acts of Greenan, Mione, and Utsch constitute a conspiracy to deprive him of various rights under 42 U.S.C.

---

**6.** Although defendants recognize that "it is generally not the court's role to determine issues of credibility" with regard to summary judgment motions, they nevertheless urge us "to consider the reliability of expert, scientific and trained analysis as opposed to the self-serving statements of the complainant/victim/friend of the plaintiff." (Ossining Defs.' Memorandum of Law in Support of Motion for Summary Judgment, at 6.) This, as defendants know, we cannot do.

§§ 1983 and 1985(3). As noted previously, to support a conspiracy claim under § 1983, Fincher must show that these defendants "acted in a willful manner, culminating in an agreement, understanding, or 'meeting of the minds,'" that violated his rights. *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y. 1992). Moreover, to sustain a conspiracy claim under § 1985(3), Fincher must demonstrate an invidiously discriminatory racial animus behind the conspiracy. *See Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798; *Gagliardi,* 18 F.3d at 194.

■ For purposes of summary judgment, we find that based on the evidence of forgery (regardless of its credibility), a reasonable jury could find that Greenan, Mione, and Utsch reached an agreement to deprive Fincher of clearly established constitutional rights. Although the case could be made that even if Mione did forge the supporting affidavit, Utsch and Greenan did not necessarily know about his conduct, a rational jury could find otherwise. *See Ricciuti,* 124 F.3d at 130–31 (reversing grant of summary judgment because reasonable jury could conclude that police officers conspired to fabricate plaintiff's confession).

■ However, Fincher has offered insufficient evidence that this alleged conspiracy was racially motivated. His only proof of racial animus—the log sheet and Rolodex cards of his former attorney that form the basis of his overarching conspiracy claim—makes no reference either to the forgery incident in general or to defendants Greenan, Mione, or Utsch in particular. Even were we to find that this offer of proof reveals a racial animus on the part of some Ossining police officers, there is no evidence in any way connecting their conduct or motivation with that of Greenan, Mione, or Utsch. Therefore, summary judgment is granted with respect to the § 1985(3) conspiracy claim against defendants Greenan, Mione, and Utsch but, as Magistrate Judge Smith recommended, denied with respect to the § 1983 conspiracy claim against them.

### 5. Ossining's Municipal Liability

Fincher alleges that the conduct of Greenan, Mione, and Utsch in connection with the 1993 robbery charges was "in accordance with a policy of Deliberate Indifference to Constitutional Rights on the part of Defendant Ossining." (Am. Compl. ¶ 72 ("Fourth Claim").) Because he also seeks to impose municipal liability on Ossining with respect to his overarching conspiracy claim, (*see id.* ¶¶ 78–79 ("Seventh Claim")), we will consider Ossining's potential § 1983 liability for both claims below in section II.C.2.

### 6. Negligent Hiring, Training, and Supervision

Fincher asserts a pendent state claim against Ossining for negligently hiring, training, and/or supervising defendants Greenan, Mione, and Utsch. (Am. Compl. ¶ 91 ("Thirteenth Claim").) Finding this claim inadequate as a matter of law, we grant summary judgment in favor of Ossining.

■ Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality. *See* N.Y. General Municipal Law § 50–e (McKinney 1986); *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 689, 429 N.E.2d 1158, 1160 (1981). It must set forth, *inter alia,* the nature of the claim and must be served within 90 days after the claim arises. General Municipal Law § 50–e. The purpose of the notice of claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation. *Brown v. New York City Transit Authority,* 568 N.Y.S.2d 54, 55, 172 A.D.2d 178, 180 (1st Dep't 1991). The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action. *Russell Pipe & Foundry Co. v. City of New York,* No. 94–8642, 1997 WL 80601, at *15 (S.D.N.Y. Feb. 25, 1997); *McNeil v. Aguilos,* 831 F.Supp. 1079, 1085 (S.D.N.Y.1993).

■ In general, the test of a notice of claim's sufficiency is whether it includes enough information to enable the municipality to investigate the claim adequately. *O'Brien,* 445 N.Y.S.2d at 689, 429 N.E.2d at 1160. Merely providing notice of the occurrence is not adequate to constitute notice of a particular claim. *Brown,* 568 N.Y.S.2d at 56,

172 A.D.2d at 180. The fact that a cause of action not mentioned in the notice of claim arises out of the same incident as enumerated claims "is not pivotal; rather, the nature of the claim and the theory of liability are determinative." *Wanczowski v. City of New York*, 588 N.Y.S.2d 1011, 1011, 186 A.D.2d 397, 397 (1st Dep't 1992) (quoting *Mazzilli v. City of New York*, 545 N.Y.S.2d 833, 835, 154 A.D.2d 355, 357 (2d Dep't 1989)). Any cause of action or theory of liability not directly or indirectly mentioned in the notice of claim may not be included in a subsequent lawsuit. *Jewell v. City of New York*, No. 94–5454, 1995 WL 86432, at *1 (S.D.N.Y. Mar. 1, 1995) (citing *Demorcy v. City of New York*, 524 N.Y.S.2d 742, 743, 137 A.D.2d 650, 650–51 (2d Dep't 1988)); *Moore v. County of Rockland*, 596 N.Y.S.2d 908, 911, 192 A.D.2d 1021, 1023 (3d Dep't 1993); *Mazzilli*, 545 N.Y.S.2d at 835, 154 A.D.2d at 357.[7]

▆ Fincher has not met the statutory requirements of § 50–e. The notice of claim he served on Ossining does not mention negligent hiring, training, or supervision among the stated causes of action, contains no factual allegations concerning those claims, and therefore fails to serve notice of those theories of liability.[8] Accordingly, these claims are not properly before us. *See Jewell v.*

*City of New York*, 1995 WL 86432, at *1 (granting summary judgment dismissing claim for negligent hiring where notice of claim merely alleged negligence and contained no facts suggesting that "negligence" referred to city's hiring practices rather than to the tortious acts of its employees); *Urena v. City of New York*, 633 N.Y.S.2d 391, 391, 221 A.D.2d 429, 429 (2d Dep't 1995) (affirming dismissal of claim for negligent hiring where notice of claim alleged only "negligence" and contained no factual allegations concerning negligent hiring); *Bryant v. City of New York*, 590 N.Y.S.2d 913, 914, 188 A.D.2d 445, 446 (2d Dep't 1992) (affirming dismissal of claim for negligent hiring, training, or supervision where notice of claim did not mention that cause of action; action involved illegal arrest and malicious prosecution); *Demorcy*, 524 N.Y.S.2d at 743, 137 A.D.2d at 650–51 (affirming dismissal of claims for, *inter alia*, malicious prosecution and negligent hiring, training, and employment where notices of claim referred only to assault and false arrest).[9] Therefore, we adopt Magistrate Judge Smith's recommendation that summary judgment be granted in favor of defendant Ossining on Fincher's claim of negligent hiring, training, and/or supervision of Greenan, Mione, and Utsch.

---

7. In some instances, lower New York state and federal courts have applied the notice requirements more flexibly. One state court, for example, stated that General Municipal Law § 50–e does not "require that a claimant state a precise cause of action *in haec verba* in a notice of claim.... The Legislature did not intend that the claimant have the additional burden of pleading causes of action and legal theories, proper for the pleadings, in the notice of claim .... [§ 50–e] was not meant as a sword to cut down honest claims, but merely as a shield to protect municipalities against spurious ones...." *De-Leonibus v. Scognamillo*, 583 N.Y.S.2d 285, 286, 183 A.D.2d 697, 698 (2d Dep't 1992) (notice of claim alleging city's negligence in causing accident deemed sufficient notice of negligent supervision claim). *See also Frazier v. City of New York*, No. 96–3345, 1997 WL 214919, at *3 (S.D.N.Y. Apr.24, 1997); *Ismail v. Cohen*, 706 F.Supp. 243, 250 (S.D.N.Y.1989). Aside from these cases being distinguishable on their facts from the instant case, their more liberal application of § 50–e has not been followed by the substantial majority of cases that have addressed the issue.

8. The July 28, 1993 Notice of Claim that Fincher filed with Ossining describes the nature of his

claim as false imprisonment, malicious prosecution, and violation of civil rights. In describing the time, place, and manner in which the claim arose, Fincher states:

> On or about March 30, 1993, false charges of Robbery in the First Degree were filed in the name of James G. Harris. A supporting deposition was filed with, upon information and belief, a forged signature of Mr. Harris. Village Police Officer Robert Mione, who notarized [the] forged signature and others employed by Ossining knew the charges were falsely lodged against claimant. The charges were dismissed by the Village Court of Ossining on or about May 25, 1993.

(Notice of Claim, Pl. Exh. 9.) Fincher received permission from the Supreme Court to file the notice of claim late. (*See* Decision and Order, dated March 1, 1993, Pl. Exh. 9.)

9. *See also Moore*, 596 N.Y.S.2d 908, 192 A.D.2d 1021; *Wanczowski*, 588 N.Y.S.2d 1011, 186 A.D.2d 397; *Brown*, 568 N.Y.S.2d 54, 172 A.D.2d 178; *Mazzilli*, 545 N.Y.S.2d 833, 154 A.D.2d 355; *Mojica v. New York City Transit Auth.*, 498 N.Y.S.2d 448, 117 A.D.2d 722 (2d Dep't 1986).

## C. *Overarching Conspiracy*

■ In addition to the claims arising out of the 1991 drug charge and the 1993 robbery charge, Fincher alleges that all fifteen defendants conspired to deprive him of various civil rights. Specifically, he claims that at various times one or more of the individual Ossining police defendants, individually and upon information and belief with other Ossining police officers and third parties under their direction and control, continued their unlawful conspiracy and have shot at, assaulted, harassed and attempted to intimidate the Plaintiff since the termination of the [1991 drug case] and especially since filing his Notice of Claim against the Village of Ossining. Such acts have been motivated by invidious discrimination due to race and have included threatening his life, repeatedly referring to him a worthless nigger, by pulling pistols and pulling knives on him for no valid reason, by having individuals in unlicensed vehicles shoot at him, yet be present nearby in police vehicles while doing nothing, by strong arming Plaintiff and advising him to drop this instant suit against Ossining; by advising him that he would end up dead just like the guys the cops got in the movies "New Jack City" and "King of New York"; by setting him up for false, trumped up charges and perverting the court process for continuing their evil and illegal ends.

(Am. Compl. ¶ 78 ("Seventh Claim").) Based on the foregoing allegations, Fincher sues all defendants for racially-motivated conspiracy pursuant to § 1985(3). A § 1985(3) conspiracy claim will lie where the defendants have conspired, based on an invidiously discriminatory class-based animus, to deprive plaintiff of constitutional rights and have acted in furtherance of that conspiracy. *See Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798; *Gagliardi*, 18 F.3d at 194.

Fincher's evidence of this ongoing and widespread conspiracy consists of records kept by Lester Lichter, the attorney who represented Fincher in his 1991 drug case. These records include a log and notecards of incidents relayed to Lichter by Fincher. According to the affidavits of Fincher, Lichter, and Buderwitz (Fincher's current attorney), every time Fincher would have an encounter with the Ossining police, Fincher would inform Lichter within a day of the incident. (*See* Fincher Aff. ¶¶ 13–15; Lichter Aff. ¶¶ 12–17; Buderwitz Aff. ¶ 22.) Lichter would then record the incident in a log sheet or on a Rolodex card, or both. (Lichter Aff. ¶ 14.) These records were kept for use in Fincher's defense against the 1991 drug charge. (*Id.* ¶ 13.) Defendants argue that these records are inadmissible hearsay. (*See* Ossining Defs.' Reply Memorandum of Law in Support of Motion for Summary Judgment, at 5–6.) Fincher contends that the records are admissible either to refresh his recollection or under a hearsay exception. (*See* Buderwitz Aff. ¶¶ 22, 23.)

### 1. *Admissibility of the Lichter Records*

■ On a motion for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). This requirement means that in deciding a motion for summary judgment, a court may consider only such evidence presented in an affidavit as would be admissible if testified to at trial. *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 525 (2d Cir.1996); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir.1991). As indicated above, defendants argue that Lichter's records, which are Fincher's only evidence of an overarching conspiracy, constitute inadmissible hearsay and therefore should not be considered by this Court in determining their summary judgment motion.

Defendants are correct that, at first glance, the log entries and notecards present a multiple hearsay problem: not only are the records themselves hearsay, but many entries may contain hearsay (or in some instances double hearsay) statements. To begin with, Lichter had no first-hand knowledge of any of the events detailed in his records. Rather, the log and notecards were created by Lichter based on information provided by Fincher and are now being offered for the truth of their content. Moreover, many of the entries contained in the records consist of statements allegedly made

to Fincher by some of the individual defendants, as well as statements attributed to these defendants that were relayed to Fincher by third parties.

 Nevertheless, assuming that at trial Fincher would be able to lay a proper foundation, the records themselves and many of the recorded statements may be admissible. First of all, Lichter's records may fall within the hearsay exception for recorded recollection. To constitute recorded recollection, a record must "concern[ ] a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, [and be] shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly." Fed.R.Evid. 803(5).[10] Therefore, in order for the records themselves to be admissible, at trial Fincher would have to show (1) that his memory of the events detailed in the records is sufficiently impaired; (2) that he checked the records when the events were fresh in his memory; and (3) that at the time he checked the records, he knew that they correctly reflected his knowledge of the events. Based on Fincher's deposition and affidavit, it appears that he would probably (although not certainly) meet these foundational requirements. Therefore, for purposes of summary judgment, we consider the records themselves to fall within the recorded recollection exception to the hearsay rule.

Even though the records themselves may be admissible, only those portions of the records that do not contain hearsay statements would be admissible at trial. *Cf.* Fed. R.Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule . . . ."). Most of the statements in Lichter's records are statements allegedly made by defendant officers and are not hearsay. To the extent that these are racial epithets and the like, they are not hearsay because they

are not relied on to prove the truth of the matter asserted, but only to show that the statements were made. *See* Fed.R.Evid. 801(c). Moreover, any other statements allegedly made by defendants directly to Fincher constitute non-hearsay admissions by a party opponent. *See* Fed.R.Evid. 801(d)(2)(A); *United States Small Bus. Admin. v. Citibank*, No. 94–4259, 1997 WL 45514, at *4 n. 5 (S.D.N.Y. Feb.4, 1997) (disputed statements constituted admission by party opponent and thus were not barred by admissibility requirement of Rule 56(e)). Other statements, however, merely reflect what Fincher was told by third parties about what was said by various officers. These statements are hearsay, do not fall within an exception, and are inadmissible.

Additionally, we note that at trial Fincher would be able to use the records to refresh his recollection in the course of his own testimony, assuming he could lay a proper foundation. *See* Fed.R.Evid. 612. However, contrary to Fincher's contention, Rule 612 would not permit him to admit the records into evidence.[11]

 On balance, we find that the Lichter records contain enough admissible admissions of wrongdoing to support Fincher's allegation of an ongoing conspiracy. In addition, the evidence in the records of repeated racial epithets suffices, for summary judgment purposes, to bring this alleged conspiracy within the ambit of § 1985(3).

However, this is not sufficient to withstand summary judgment as to all fifteen defendants. First, the Lichter records make no mention of defendants Westchester or Cruz. With no evidence before us of their involvement in the alleged overarching conspiracy, we adopt Magistrate Judge Smith's recommendation to grant summary judgment in favor of defendants Westchester and Cruz with respect to that claim. Second, the Lichter records also do not mention defen-

---

**10.** "If admitted, the . . . record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." Fed. R.Evid. 803(5).

**11.** Rule 612 would allow only the defendants to introduce the records into evidence, if they so

chose. *See* Fed.R.Evid. 612 ("if a witness uses a writing to refresh memory for the purpose of testifying . . . an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness").

dants Greenan, Mione, or Utsch. However, in light of Fincher's contention that the 1993 forgery incident was part of the overarching conspiracy, summary judgment is denied as to those three defendants in accordance with Magistrate Judge Smith's recommendation. Third, the only reference to defendant Lentz in the Lichter records is on a Rolodex card that simply reads: "Apr. 8, 1993. Det. Lent [sic]." [12] (Lichter Aff., Pl. Exh. D.) This obscure notation is wholly insufficient to tie Lentz to the alleged conspiracy. Accordingly, we agree with Magistrate Judge Smith that summary judgment should be granted to Lentz on this claim. Fourth, as to the remaining individual defendants, we deny their summary judgment motion with respect to the overarching conspiracy claim.[13] Finally, for reasons discussed below, we grant summary judgment in favor of defendant Ossining with respect to the overarching conspiracy claim, contrary to Magistrate Judge Smith's recommendation.

Additionally, we note that we cannot say as a matter of law those defendants to whom we deny summary judgment are entitled to qualified immunity. Defendants are entitled to qualified immunity only if no reasonable jury, viewing the evidence and drawing all inferences in Fincher's favor, could conclude that it was not objectively reasonable for defendants to believe their conduct did not violate Fincher's constitutional rights. See *Ricciuti*, 124 F.3d at 128; *Oliveira*, 23 F.3d 642, 649. Because a material factual dispute exists as to the alleged overarching conspiracy, the issue of qualified immunity is one for a trier of fact.

### 2. Ossining's Municipal Liability

In essence, Fincher asserts that the improper conduct of the Ossining police—*i.e.*, the fabricated felony complaint and the general harassment and intimidation—was in accordance with an Ossining policy of "deliberate indifference." To support this contention, Fincher points in three directions. First, he contends that two prior civil rights complaints (unrelated to Fincher) put Ossining on notice of a problem between its white police officers and black residents. As part of the terms of the settlement of those complaints, Ossining sought the assistance of the Martin Luther King Institute for Non–Violence in training its officers in community relations and created a Police Advisory Council as a liaison between residents and police. Based on the deposition testimony of some of the defendant officers, in which they state that the community-relations training had no identifiable impact on policies, procedures, or conduct, Fincher asserts that the training was a "farce" or "placebo" and was agreed to merely to "placate" the black community. (*See* Fincher Aff. ¶ 10; Pl.'s Objections to Report and Recommendation of Magistrate Judge ¶¶ 3, 13.)

Second, Fincher contends that the Chief of Police's failure to conduct periodic officer evaluations contravenes one of the Ossining

---

**12.** Based on Fincher's misspelling of Lentz's name in his Amended Complaint ("Lint"), and considering that Lentz is, in fact, a detective, (*see* Lentz Aff. ¶ 1), we presume that the reference on the notecard to "Det. Lent" is meant to identify defendant Lentz.

**13.** In doing so, we are adopting Magistrate Judge Smith's recommendation with respect to defendants Reddy, Keegan, Foley, Diego, Quartucio, and Sullivan, but are declining to adopt her recommendation with respect to defendants Slater and Jefferson.

In addition, we note that our holding reflects only that Fincher has provided enough evidence to present a genuine issue of fact as to an overarching conspiracy. Defendants' arguments in favor of summary judgment go to the credibility, not the sufficiency, of Fincher's evidence. That is not to say, however, that their contentions are without merit. For example, that Fincher at his deposition was completely unable to recall a single detail of a conspiracy that he says went on for years is curious. (*See* Fincher Deposition, dated Feb. 15, 1994, Ossining Defs.'s Exh. T, at 252–58.) Moreover, in order for the Lichter records to be admitted into evidence as recorded recollection at trial, Fincher would have to testify that he cannot sufficiently recall these supposedly ongoing and emotionally scarring events. Even if the records are admitted, their reliability would be open to question, having been prepared in anticipation of Fincher's criminal defense. Also, Fincher has provided no evidence that the incidents catalogued in the Lichter records were ever reported to the appropriate Ossining authorities by way of a formal or informal complaint. Finally, at trial defendants would be free to introduce evidence, improperly referenced at the summary judgment stage, that most of the several complaints filed against Fincher were initiated by civilians and that few resulted in his arrest. Despite defendants' protestations, we leave resolution of these matters to a jury.

Police Department's written regulations. He offers this as proof that Ossining fails properly to supervise its police officers and instead condones police misconduct. (*See* Buderwitz Aff. ¶¶ 32–40.)

Finally, Fincher alleges that the Ossining Police Department does not properly investigate complaints of police misconduct. Apparently, he believes that the Chief's investigation procedure—instructing relevant officers to submit a written report regarding the disputed incident and designating a lieutenant to investigate the claim—is simply a method of facilitating collusion to rid the police department of such complaints. (*See id.*) After briefly canvassing the law of municipal liability, we will address these claims of inadequate training, supervision, and investigation in turn.

■ A municipality may not be held liable under § 1983 for the conduct of its lower-echelon employees solely on the basis of respondeat superior. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992). In order to impose § 1983 liability upon a municipality, a plaintiff must demonstrate that a constitutional harm resulted from a municipal policy or custom. *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36; *Sorlucco*, 971 F.2d at 870. A single incident alleged in a complaint, especially if it involved only actors below the policy-making level, generally does not suffice to show a municipal policy or custom. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991). However, where the discriminatory practices of municipal officials are so persistent and widespread as to imply the constructive acquiescence of senior policy-making officials, a custom or policy may sometimes be inferred. *Sorlucco*, 971 F.2d at 870–71.

■ For example, a custom or policy of deliberate indifference to the constitutional rights of those within its jurisdiction may be inferred from evidence that the municipality had notice of widespread charges of police misconduct yet repeatedly failed to make any meaningful investigation. *See Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *Ricciuti*, 941 F.2d at 123; *Fiacco v.*

*City of Rensselaer*, 783 F.2d 319, 328–31 (2d Cir.1986). Alternatively, where the municipality, in the face of an objectively obvious need for more or better training or supervision, fails to take action, a custom or policy may be inferred. *See Board of the County Comm'rs v. Brown*, —— U.S. ——, ——, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388–92, 109 S.Ct. 1197, 1204–07, 103 L.Ed.2d 412 (1989); *Ricciuti*, 941 F.2d at 123. If a custom or policy of deliberate indifference is established, the municipality may be held liable if its inaction was the "moving force" behind the injury alleged. *Brown*, —— U.S. at ——, 117 S.Ct. at 1388.

■ With respect to claims for inadequate training or supervision, a municipality's failure must amount to nothing less than "deliberate indifference" to the rights of citizens. *See id.* at ——, 117 S.Ct. at 1390; *City of Canton*, 489 U.S. at 388–89, 109 S.Ct. at 1204–05. "A showing of simple or even heightened negligence will not suffice." *Brown*, —— U.S. at ——, 117 S.Ct. at 1390. In *City of Canton*, the Supreme Court took pains to delineate what does not constitute "deliberate indifference":

> [It is not enough] that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little or nothing about the training program or the legal basis for holding the [municipality] liable.

*Id.* at 391, 109 S.Ct. at 1206. The Court further explained that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a § 1983 plaintiff will be able to point to something the city 'could have done'

to prevent the unfortunate incident." *Id.* at 392, 109 S.Ct. at 1206. To allow this showing to suffice would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *Id.*

■■■■ The Second Circuit has crafted a three-prong test to determine whether or not a municipality's failure to train or supervise constitutes "deliberate indifference." *See Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992). First, the plaintiff must show that a policy maker knows "to a moral certainty" that municipal employees will confront a given situation. *Id.* at 297 (quoting *City of Canton,* 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10). Second, the plaintiff must show either that the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation. *Id.* A decision qualifies as a "difficult choice" where it requires more than the application of common sense or "where, although the proper choice is clear, the employee has powerful incentives to make the wrong choice." *Id.* Third, the plaintiff must show that the wrong choice by the municipal employee will frequently cause the deprivation of a citizen's constitutional rights. *Id.* at 298.

Here, Fincher alleges that Ossining is liable for the conduct of Greenan, Mione, and Utsch in falsifying the 1993 felony complaint and for the general harassment of the other Ossining officers. In essence, Fincher claims that these actions resulted from inadequate training. We turn first to the issue of whether the allegedly fabricated robbery charges were the product of inadequate training reflecting a policy of deliberate indifference. In *Walker,* the Court of Appeals addressed the similar question of whether the city's police department "had an obligation to train and supervise officers not to commit perjury

or aid in the prosecution of the innocent." 974 F.2d at 299. The court stated that

> [w]here the proper response—to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent—is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by the policymakers to the need to train or supervise.

*Id.* at 299–300. The court added the following caveat: "While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Id.* at 300.

■■■■ Returning to Fincher's claim, it is safe to say that officers of common sense know that forgery, like perjury, is wrong. Arguably, however, Fincher has produced some evidence that there was a history of Ossining police officers trumping up charges, at least against him. Nevertheless, there is no evidence that Ossining officials had any notice of this misconduct. Fincher has produced evidence of only one instance in which he filed a complaint against an Ossining police officer, and even that made no claim of fabricated charges. (*See* Pl. Exhs. 18, 19.) Therefore, no deliberate indifference can be inferred.[14] Accordingly, summary judgment is granted in favor of defendant Ossining with respect to claims arising out of the 1993 robbery charge.

■■■■ Next, we consider Fincher's contention that the community-relations training received by Ossining police reflects a policy of deliberate indifference. On the contrary, we find that the implementation of such a program demonstrates that Ossining took deliberate steps to prevent its police officers from violating the constitutional rights of its residents. Fincher's argument that "little or

---

**14.** Although the *Walker* court reversed the district court and remanded in order to allow the plaintiff to pursue discovery into whether there was a practice of condoning perjury, that case was based on a motion to dismiss for failure to state a claim. The court remanded merely because, if discovery could uncover such a practice, a claim would lie. By contrast, the instant issue concerns motions for summary judgment, which must be granted if there is no disputed issue of material fact.

nothing has changed" despite this training is unavailing. (*See* Buderwitz Aff. ¶¶ 31–32.) Regardless of Fincher's bare-bones evidentiary support for this assertion, he has not demonstrated that Ossining has been put on notice of the need for additional community-relations training by any subsequent incidents. Despite the litany of indignities detailed in the Lichter records, Fincher has produced evidence of only one instance in which he filed a complaint with Ossining.[15] (*See* Pl. Exhs. 18, 19.) The complaint process serves not only to redress individual wrongs, but to alert Ossining to any widespread or institutional misbehavior. Assuming *arguendo* that there was recurring police misconduct and that further community-relations training was needed, Fincher nevertheless has failed to show that Ossining was or should have been aware of any problem that needed correction. Therefore, Fincher has failed to show that the Ossining training programs are inadequate and that Ossining was deliberately indifferent.

 Second, we also find Fincher's inadequate supervision claim to be lacking. His sole argument in this regard is that the Chief of Police did not prepare semi-annual fitness reports of his officers. This contention, although apparently true (the Chief admitted as much), is in no way probative of a policy of deliberate indifference. Regardless of whether semi-annual evaluations do or should occur, Ossining's procedure for filing and investigating civilian complaints against police officers ensures that any officer misconduct will be reviewed. Absent evidence of a constitutional infirmity, our function is not to micro-manage municipal police departments. *Cf. City of Canton*, 489 U.S. at 392, 109 S.Ct. at 1206–07.

 Finally, Fincher's inadequate investigation claim is equally without merit. Although deliberate indifference may be demonstrated where a municipality conducts no meaningful investigation in response to re-

peated civil rights complaints, Ossining adequately investigated each of the three complaints documented by Fincher. With respect to the two complaints that led Ossining to institute special training, all indications are that the incidents were fully investigated. The Chief of Police at the time went so far as to request twice that the U.S. Department of Justice investigate. (*See* Ossining Defs.' Reply Memorandum of Law in Support of Motion for Summary Judgment, at 8–9.) Indeed, far from being ignored or covered up, the Police Advisory Council and special training were instituted in response to these incidents. With respect to Fincher's own complaint, he himself has provided evidence that the matter was fully investigated. (*See* Pl. Exhs. 18–20.) The mere fact that the Ossining Police Department concluded that Fincher's complaint was unfounded does not mean that the investigation was perfunctory or tainted. In addition, Fincher's contention that the Chief's investigation procedure—which, we note, is in compliance with the department's regulations (*see* Pl. Exh. 16, Rules and Regulations of the Ossining Police Department, Art. 5.5.5.)—facilitates cover-ups is entirely unsupported and without merit.

We find that Fincher has not set forth specific facts showing that there is a triable issue as to Ossining's deliberate indifference. Accordingly, we decline to adopt Magistrate Judge Smith's recommendation and grant summary judgment in favor of defendant Ossining with respect to the overarching conspiracy claim.[16]

### Conclusion

For the foregoing reasons, we adopt Magistrate Judge Smith's Report and Recommendation in part. Specifically, we order the following. First, summary judgment is granted to all relevant defendants with re-

---

**15.** The incident precipitating this complaint was unrelated to any of the incidents recorded by Lichter.

**16.** For reasons we need not presently explore, unlike Magistrate Judge Smith we do not read Fincher's Amended Complaint to assert a claim against Ossining for negligent hiring, training, or

supervision in connection with the overarching conspiracy. Even were we to assume that Fincher has stated such a claim, we would grant summary judgment in Ossining's favor due to Fincher's apparent failure to file a notice of claim concerning these allegations pursuant to New York General Municipal Law § 50–e.

spect to all federal and state claims arising from the 1991 drug charge.*

Second, with respect to the federal and state claims arising out of the 1993 robbery charge, summary judgment is granted in part and denied in part as follows. Summary judgment is granted to defendants Greenan, Mione, and Utsch on Fincher's federal and state false arrest/false imprisonment claims. Summary judgment is denied to defendants Greenan, Mione, and Utsch with respect to Fincher's federal and state malicious prosecution claims and his § 1983 conspiracy claim. Summary judgment is granted to defendant Ossining on all claims arising from the 1993 drug charge.

Third, with respect to the overarching conspiracy claim, summary judgment is granted to defendants Westchester, Ossining, Cruz, and Lentz, but denied to defendants Greenan, Mione, Utsch, Reddy, Keegan, Foley, Diego, Quartucio, Sullivan, Slater, and Jefferson.

SO ORDERED.